THE CITY OF FORT SCOTT V. C. KAUFMAN.

CITY — *Sewer Tax* — *Assessment.* Under ¶ 834 of the General Statutes
of 1889, the costs of the construction of a discharging sewer in a city
of the second class, that is situated wholly outside of a sewer district,
cannot be assessed against the lots and pieces of ground in said sewer
district.

*Error from Bourbon District Court.*

INJUNCTION brought by *Kaufman,* and many others, against
the *City of Fort Scott,* and others, to restrain the collection
of a certain tax. Judgment for the plaintiffs, on June 1, 1889.
The defendants bring the case here. The material facts appear in the opinion.

*Ware, Biddle & Cory,* for plaintiffs in error.

*J. D. McCleverty,* for defendants in error.

Opinion by SIMPSON, C.: This case was tried in the district court of Bourbon county on the following agreed statement of facts:

"1. From and since May 30, 1888, the defendant, the city
of Fort Scott, Kansas, has been and still is a city of the first
class, duly organized and existing under the laws of this state.

"2. For several years prior to May 30, 1888, the said city
had been a city of the second class, duly organized and existing under the laws of this state.

"3. On April 6, 1888, said city duly enacted and published
the ordinance creating sewer district No. 3, as alleged in the
petition of plaintiffs herein, which sewer district comprised
the territory as set forth in said petition.

"4. Thereafter, and prior to August 14, 1888, said city
caused a discharging sewer to be built, commencing at a point
26 feet north of the center of the alley in block 16, in Wilson's addition to said city, and running in a northeasterly
direction about 2,591 feet to a point near the Marmaton river,
into which it emptied, said sewer being wholly built of sewer
pipe 18 inches in diameter.

"5. Said city during the same time caused to be built certain sewers within said sewer district No. 3, commonly known

and called lateral sewers, built of sewer pipe of 6, 8 and 10 inches in diameter, each of which said lateral sewers connected with and emptied into the said discharging sewer mentioned in the preceding section.

"6. Attached hereto and made a part hereof is a plat of said city, showing, marked thereon in red-ink lines, the territory comprising said sewer district No. 3, and showing also in dotted lines of red ink the lines of sewer above mentioned, numbered from 1 to 5. Upon the north of the sewer district is Elm street, which is a street 45 feet wide. The other streets in the sewer district are 72 feet wide; the alleys are 18 feet wide, and the lots are 50 by 120 feet. None of the territory through which said discharging sewer passes is now or has ever been comprised within any other sewer district. The greater part of said sewer district No. 3 is upon a rocky bluff, about 50 feet above the valley of the Marmaton river. Said river runs through the city, and is the available place for discharge of sewers. At the point north of sewer district No. 3, the valley is much taken up with railroad buildings, tracks, switches, stock-yards, etc. It is a level, alluvial flat, and not used as sites for stores, or residences, or business property. The said discharging sewer runs throughout its whole distance either through Elm street, or through railroad ground and right-of-way, only about 391 feet being in Elm street. At no point does it run through any property owned by a private individual. Said discharging sewer is laid very shallow, averaging three feet underground. It is an 18-inch pipe, and it has no Ts or Ys or joints permitting connection from any source or direction except the laterals from said district. It is laid in the soft alluvial earth at little expense, and has a fall of one foot in two hundred feet, just enough to drain well; and at present it benefits no property outside of said sewer district No. 3, nor does any sewage pass into or through it from outside of said district; nor was it intended in the construction of said sewer that any property outside of said district should be benefited; nor was it built for any other purpose than to discharge the sewage of said district, except as said discharging sewer might be extended south to accommodate new sewer districts, which it is capable of doing; nor is it built or situated so that any property outside of said district can be benefited, or use said sewer, until extended as above stated. The laterals are laid deep, and are in part blasted out of hard rock, and have the following fall: No. 1, 44 feet; No. 2, 44½ feet; No. 3, 47⅓ feet; No. 4, 40 feet. The said discharging

sewer runs to the best point of discharge at the Marmaton river, considering engineering difficulties and sanitary considerations, and was built pursuant to a well-considered plan, and with the possibility of being extended as above stated.

"7. Said sewers above mentioned are built wholly within the corporate limits of said city.

"8. On the 14th of August, 1888, said city, after due notice of such assessment, duly enacted and published the ordinance, a copy of which is attached to plaintiffs' petition, levying assessments as therein set forth upon each and every of the lots and parcels of ground in said ordinance mentioned and described, and situated within said sewer district No. 3, to pay the cost of constructing said sewers; and in said assessment the said city counted and charged in as a part of the amounts so levied and assessed upon the said property in said sewer district No. 3 the cost of construction of all of the said sewers above mentioned — the discharging sewer, constructed as aforesaid outside of the limits of said sewer district No. 3, as well as the said lateral sewers within said district — and caused the same to be certified up to the proper taxing officers of the county of Bourbon, Kansas, in which said city is situated. The accounts of the cost of construction of all of said sewers were kept by said city as one charge, and the relative cost of constructing so much of said sewers as is situated outside of said sewer district as compared with the cost of constructing all of said sewers is not definitely known, but amounts to about one-third of such total cost; the precise relative cost of such sewers can only be determined by a special survey and estimate thereof.

"9. Said Z. A. Hornaday is county treasurer of said county, and J. R. Smith county clerk, as alleged in plaintiffs' petition, who respectively, as therein alleged, placed said assessments upon the tax-rolls of said county, and are proceeding to enforce the collection of the same as in case of other taxes; and said assessments appear as a lien against said respective pieces of property, as alleged in said petition.

"10. The said plaintiffs are the owners and in the actual use and possession respectively of said lots and parcels of land as alleged in said petition.

"11. In this agreed statement the city raises no point upon the question of tender, prior to the bringing of this suit, and the case is submitted upon the question as to the legal right to charge upon the property-holders of said sewer district the

cost of the construction of the discharging sewer situated outside of said district."

It appears from this statement that the discharging sewer, the cause of this contention, was built wholly outside the limits of sewer district No. 3 for a distance of 2,591 feet, but was constructed for the sole purpose, at present, of receiving the discharges from the lateral sewers in district No. 3, and has no connection with the other sewers of said city, and accommodates the people of no other sewer district in the city except those residing in sewer district No. 3.   Is the property of the inhabitants of sewer district No. 3 to be specially assessed to pay for its construction?   This is the question involved in the case.   The trial court denied the right of the city to assess its costs upon the taxable property of the sewer district.   The solution of this question depends solely on the proper construction of the act entitled "An act to authorize cities of the second class to construct and maintain a system of sewerage and drainage." (Laws of 1887, ch. 102, p. 151.) Section 2 of the act says:

"The mayor and council shall have power to provide for a system of sewerage and drainage for the city or any part thereof, and to build and construct sewers and drains, *by districts or otherwise*, as the mayor and council may designate. The cost and expenses of constructing the same shall be assessed against the lots or pieces of ground *contained in the district in which the same is situate*," etc.

In this case the mayor and council determined to construct sewers by districts, and created sewer district No. 3, and provided for the construction of a certain number of lateral sewers therein, but further provided for the construction of a discharging sewer, with which these lateral sewers connected, but 2,591 feet of whose length was entirely outside the boundaries of sewer district No. 3 as they established that district, but its whole length was within the boundaries of the city.   Whatever may be said of the inequitable operation of this statute, it seems that its meaning is so plain that serious doubts ought not to arise as to its application.   In specific terms it pro-

vides that the costs and expenses of the construction of a sewer shall be assessed against the lots and pieces of ground contained in the district in which it is situated. The cost of that discharging sewer of 2,591 feet, that is expressly stated and agreed to be entirely and wholly outside of the limits of sewer district No. 3, and is not in the district, cannot be assessed against that class of property in sewer district No. 3 that is taxable for that purpose. The meaning of the statute is so apparent that we are at a loss to enlarge upon its construction. In fact there is no room for construction, and we do not think that its evident force and effect can either be lessened or enlarged by a citation of authorities.

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.