No. 36,911

The Consumers Coöperative Association, *Plaintiff*, v. Edward F. Arn, Attorney General, Frank J. Ryan, Secretary of State, B. A. Welch, State Bank Commissioner, and the State Charter Board, *Defendants.*

(183 P. 2d 453)

Opinion filed July 12, 1947.

*E. H. Hatcher,* of Topeka, and *F. R. Olmsted,* of Kansas City, Mo., were on the briefs for the plaintiff.

*Edward F. Arn,* attorney general, and *Clay C. Carper, Harold R. Fatzer, C. H. Hobart, William Timmerman* and *L. P. Brooks,* assistant attorneys general, were on the briefs for the defendants.

The opinion of the court was delivered by

Wedell, J.: This is an original proceeding brought by The Consumers Coöperative Association, a corporation, against Edward F. Arn, attorney general; Frank J. Ryan, secretary of state; B. A. Welch, state bank commissioner; and the State Charter Board, consisting of those state officials.

The purpose of the proceeding is to effectuate the filing of an amendment to plaintiff's articles of incorporation in the office of the secretary of state showing an increase in its capital stock from $2,000,000 to $12,000,000. The amendment pertains solely to that subject.

Plaintiff was originally organized and chartered in 1931 as The Coöperative Union Oil Company, under our coöperative societies act, G. S. 1935, 17-1501 *et seq.,* with a capital stock of $150,000. In 1935 plaintiff, with the approval of the state charter board, filed an amendment to its articles of incorporation changing its name to The Consumers Coöperative Association. In 1938 plaintiff filed its application with the state charter board to be brought under and to have the benefits of the coöperative marketing act. (G. S. 1935, 17-1601 *et seq.*) The application was approved. Plaintiff's capital stock has been increased by amendments, approved by the charter board, as follows: In 1937 to $300,000; in 1943 to $800,000; in 1945 to $2,000,000. The instant certificate of amendment filed with the secretary of state in June, 1946, insofar as now material, provides:

"That Section 1 of Article VI be amended to read as follows:

" 'Section 1. *Capital Stock.* The capital stock of this association shall be $12,000,000, consisting of one hundred twenty thousand (120,000) shares of common stock of the par value of $25.00 per share, and three hundred sixty thousand (360,000) shares of preferred stock of the par value of $25.00 per share.' "

Defendants do not contend the certificate of amendment filed is in any respect lacking in form or legal sufficiency.

In January, 1947, the state charter board notified plaintiff of its refusal to approve this amendment. In February, 1947, plaintiff again filed an application requesting that the amendment be filed and that the charter board state its reasons for its action in the event it refused to approve it. The amendment was again refused and in March, 1947, the charter board stated its reasons for such refusal. The charter board did not contend the requested increase in capital stock was excessive under the marketing act or that the certificate of amendment filed was lacking in legal sufficiency. On the contrary, it set forth alleged conduct of plaintiff in the operation of its business which, in the opinion of the charter board, constituted grounds for ousting plaintiff from conducting its business operations under the coöperative marketing act. The various alleged reasons assigned by the charter board as grounds for ouster are all set forth at length in the opinion in an ouster case subsequently filed and this day decided. (*State, ex rel., v. Consumers Coöperative Ass'n,* ante, p. 324, 183 P. 2d 423.) In our view of this case, as will presently appear, it is unnecessary to repeat here the alleged grounds upon which the ouster suit is based.

The charter board contends it has the right to consider all collateral matters that it believes are reflected by the public records and which it claims are common knowledge in determining whether it will approve, or disapprove, the requested amendment for an increase in the capital stock of the plaintiff. It argues that if, upon its own investigation of such collateral matters, it concludes a corporation is not operating pursuant to its charter powers and the law it may, and has the duty to, disapprove an application for an amendment to increase capital stock.

The plaintiff, in substance, contends: (*a*) The requested amendment seeks no enlargement or alteration of its existing charter powers, which were previously approved; (*b*) the coöperative marketing act contains no limitation or restriction on the amount of its capital stock; (*c*) the certificate of amendment was regular and sufficient in form; (*d*) in view of the provisions of the new 1939 general corporation code the charter board is no longer required to approve *an amendment* to the articles of incorporation of this association; (*e*) if the charter board has the power or duty to approve or disapprove *an amendment* it can look only to the legal sufficiency of the certificate of amendment and cannot determine the existence, or legal effect, of collateral facts which, if judicially determined, might or might not constitute grounds for ouster; (*f*) if plaintiff is not operating in accordance with its charter powers, or the law, the proper remedy against it is an action in quo warranto to oust it; and (*g*) that the refusal to permit the requested amendment constitutes a denial of a statutory privilege which is having disastrous effects on its business.

While all these contentions of the parties are interesting, the immediate and primary question in this particular case is whether the charter board has authority to disapprove *an amendment* which seeks merely an increase in the capital stock of this plaintiff. The marketing act under which plaintiff is operating places no restriction or limitation on the amount of its capital stock. (G. S. 1935, 17-1601 *et seq.*) Since the instant amendment seeks nothing except an increase in capital stock, it is difficult, if not impossible, to understand how the charter board, assuming it has power to pass *on amendments,* could refuse such an amendment so long as the plaintiff has not been ousted and remains in full possession of its charter authority to operate its business. That statement, of course, assumes the certificate of amendment conforms in all respects to the requirements of law, a fact conceded in this case.

We shall, however, in accordance with the request of the parties pass on to a consideration of the broader and fundamental question whether, since the enactment of the general corporation code in 1939, the charter board must approve a requested *amendment* of articles of incorporation before the amendment can become operative, when the certificate of amendment itself is in all respects regular in form and legally sufficient.

· The answer requires us to construe the legislative intent as reflected by various pertinent statutes. The parties contend they are entitled to such a ruling under the declaratory judgment act. (G. S. 1935, 60-3127 *et seq.*) This court, of course, does not have original jurisdiction under the declaratory judgment act. From the facts alleged it is evident, however, and the parties agree, that this controversy has reached the stage where the consequential relief sought can be obtained through mandamus. In *Public Service Commission v. Kansas Gas and Electric Co.,* 121 Kan. 14, 246 Pac. 178, it was held:

"The supreme court can take original jurisdiction under the declaratory judgment act only where the consequential relief to be had if the controversy involved had reached that stage could be obtained through quo warranto, mandamus or habeas corpus." (Syl. ¶ 2.)

The parties agree this proceeding should be treated as one in mandamus. Under all the circumstances, including the fact this case is really a companion to the original quo warranto case, previously mentioned, and now before us, we shall treat the instant case as one permitting the relief ordinarily obtainable in a mandamus proceeding.

The fundamental question now before us pertains only to the power of the charter board to approve or disapprove *amendments* to articles of incorporation·formerly approved. Before discussing the subject of amendments it is well to bear in mind that in the instant case there is no question concerning the fact that plaintiff's original articles of incorporation and all succeeding amendments thereto, except the last one, were approved.

Defendants concede article 15, chapter 17, Laws of 1923, which relates to coöperative societies, under which plaintiff was originally organized, never has required amendments to be approved by the charter board. Defendants, however, contend G. S. 1935, 17-1608 of the marketing act, under which plaintiff is now operating, does require amendments to be approved by the charter board. That statute provides:

"The charter may be altered or amended by any regular meeting or at any special meeting called for that purpose. Any amendment must first be approved by two thirds of the directors and then adopted by a vote representing a majority of all the members of the association. *Amendments* to the charter when so adopted *shall be filed in accordance with the provisions of the general corporation law of this state and be approved by the charter board."* (Our italics.)

From the italicized portion of this statute it appears the legislature desired to make the required procedure for the filing and approval of amendments of charters of corporations operating under the coöperative marketing act conform to the procedure pertaining to the filing and approval of amendments of other corporation charters under the general corporation law. That amendments of charters prior to the enactment of the general corporation code in 1939 were required to have the approval of the charter board is conceded. (G. S. 1935, 17-216.) But that provision of the old law was expressly repealed by section 154, chapter 152, Laws of 1939, and the general corporation code now in effect contains no requirement that amendments of articles of incorporation shall be approved by the charter board. (G. S. 1945 Supp. 17-4201 to 17-4207, incl.) In fact, G. S. 1945 Supp. 17-4202 provides that *any* corporation may, from time to time, when and as desired, amend its articles of incorporation as to the various matters indicated therein, which include increase of its capital stock. G. S. 1945 Supp. 17-4203, however, provides that articles of incorporation as so amended, changed or altered, shall contain only such provisions as it would be lawful and proper to insert in the original articles of incorporation. G. S. 1945 Supp. 17-4204 prescribes the necessary action of the board of directors of a corporation to effect an amendment and G. S. 1945 Supp. 17-4205, in substance, provides that upon the filing of a certificate of amendment, executed as previously directed, in the office of the secretary of state and the recording of a certified copy thereof in the office of the register of deeds of the county in which the original articles of incorporation are recorded, the articles of incorporation shall be deemed to be amended accordingly.

In view of the fact the legislature when enacting G. S. 1935, 17-1608 of the marketing act intended to make the filing and approval of amendments under that act conform to the general corporation law, and in view of the fact the requirement of approval of amendments by the charter board under the general corporation law was expressly repealed, and in view of the further fact that the present

general corporation code does not require the approval of amendments by the charter board, we think it inconsistent with the legislative intent to hold it was intended an amendment of plaintiff's articles of incorporation should be required to have the approval of the charter board.

Defendants contend the coöperative marketing act deals particularly with amendments of charters granted under that law and that it, rather than the general corporation code, should be held controlling with respect to amendments of plaintiff's charter. Decisions are cited in support of that general principle of law. Except for the conclusion previously reached with respect to the legislative intent defendants' contension would be sound. The general principle contended for, however, cannot be applied in derogation of the legislative intent.

Defendants also rely on the provisions of G. S. 1935, 17-1628 of the coöperative marketing act which provides:

"The provisions of the general corporation laws of this state and all powers and rights thereunder shall apply to the associations organized hereunder, except where such provisions are in conflict with or inconsistent with the express provisions of this act. It shall not be necessary for corporations organized under this act to file the affidavit required by section 17-214 of the Revised Statutes of 1923."

The trouble with defendants' contention is that the provisions of the present general corporation code with respect to amendments are not in conflict with or inconsistent with G. S. 1935, 17-1608 of the marketing act when the latter statute is interpreted in accordance with the legislative intent previously indicated.

While, as already stated, we are now concerned only with the subject of amendments, it is of some value in attempting to ascertain the legislative intent to observe also the provisions of G. S. 1935, 17-1607 of the coöperative marketing act which prescribes the procedure for obtaining an original charter. . The pertinent portion thereof reads:

"The application for charter must be subscribed by the incorporators and asknowledged by them before an officer authorized by the law of this state to take and certify acknowledgment of· deeds and conveyances; *and shall be filed in accordance with the provisions of the general corporation law of this state.*" (Our italics.)

It would thus appear the legislature intended to make the procedure· under the coöperative marketing act, both with respect to

the application for a charter and for amendments thereto, conform to the general corporation law of this state.

Defendants concede the coöperative marketing act contains no requirement that the original charter of a coöperative organized thereunder must be approved by the charter board. As already stated that act contains no limitation or restriction relative to the amount of capital stock of a corporation organized pursuant thereto. It would indeed constitute an anomaly to conclude the plaintiff association could have obtained its original charter with a capital stock of $12,000,000, or any other amount, without the approval of the charter board, but that it could not amend its charter to increase its capital stock to $12,000,000 without the approval of the board.

Having determined the charter board is without power to disapprove an amendment we obviously need not determine what matters it might consider in determining whether it would approve or disapprove an amendment, if it had such power.

This brings us to the function of the secretary of state in whose office the certificate of amendment must be filed. Are his duties solely ministerial? In considering that question in *Kansas Milling Co. v. Ryan*, 152 Kan. 137, 102 P. 2d 970, we held:

"Under the general corporation code (Laws 1939, ch. 152) the duties of the secretary of state in receiving, filing and certifying articles of incorporation or amendments thereto are not strictly ministerial." (Syl. ¶ 1.)

In a carefully prepared opinion elaborating this statement of law, we said:

"It may be conceded there is no specific provision of the general corporation code that requires either the original articles of incorporation or any amendment thereto be approved by the secretary of state before being filed. We see no fundamental difference with respect to the duty of the secretary of state whether the filing, etc., involves the original articles of incorporation or an amendment. Certainly, where either is tendered to the secrtary of state for filing, he has a duty to see that the articles of incorporation contain the information required by section 11 of the act, *i. e.*, the corporate name, location of registered office, name of resident agent, the nature of the business, etc., or, if an amendment of those particular things, that the effect is not to eliminate any. To determine whether there has been compliance in the above particulars, or that the articles of incorporation have been duly executed, may be said to be matters of form. But we do not believe his duties end there. There are certain matters of substance to be considered. The articles of incorporation or of any amendment pertaining thereto must show that the purpose of the corporation is to engage in a business in which natural persons might lawfully

engage. If it were affirmatively shown by the articles or any amendment that the contrary was true, we do not believe the secretary of state lacks power to refuse to file. Under section 24 of the corporation code there are restrictions on the corporation purchasing its own stock; under section 26 loans to officers are prohibited; under section 80 payment of dividends is limited, and there are many other provisions regulating or restricting powers If the articles of incorporation, or any amendment is absolutely at variance with the statutory provisions, is the secretary of state impotent? Must he file the articles or the amendment, leaving to the attorney general the duty to challenge regularity and legality? We do not think so. We do not mean that the secretary of state is to act as an arbiter or judge of the legal sufficiency of the articles of incorporation or any amendment, and that they are subject to his approval before being filed, but only that where it appears from the face thereof that required statements of fact and information are not included or where included make provisions for the exercise of power contrary to express or implied provisions of law, then the secretary of state has the power and it is his duty to refuse to file the articles of incorporation or the amendment thereto, as the case may be. If the secretary of state is in error in concluding either that the names the plaintiff desires to have incorporated in its articles of incorporation by the proposed amendments are not trade names, or that if they are, the general corporation code does not contemplate or authorize their inclusion in the articles of incorporation, then the writ of mandamus should issue." (p. 141.)

The certificate of amendment in the instant case is conceded to be legally sufficient. We have no hesitancy in saying the secretary of state had no power to investigate, consider and determine the legal effect of matters entirely collateral and foreign to a legally sufficient certificate of amendment, which matters, if true, might or might not compel ouster of the corporation, in determining whether he would file the amendment. This is doubly true where the amendment, as here, pertains solely to an increase of plaintiff's capital stock.

The costs of this proceeding are taxed against the defendants. The secretary of state is directed to file the requested amendment in order that it may become a part of plaintiff's articles of incorporation.

The writ of mandamus is allowed.