No. 44,770

Stewart Paul, *Appellant*, v. Topeka Township Sewage District No. 2, Shawnee County, Kansas, et al., *Appellee.*

(430 P. 2d 228)

Opinion filed July 12, 1967.

B. L. *Pringle*, of Topeka, argued the cause and was on the brief for the appellant.

*Myron L. Listrom*, of Topeka, argued the cause and *Eldon Sloan* and *James W. Sloan*, of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

Fromme, J.: This appeal was taken from a summary judgment

entered in favor of defendant in an action growing out of the establishment of a township sewage district in Topeka township, Shawnee county, Kansas.

The primary issue on appeal is whether there remained in controversy any genuine issue as to any material fact at the time such judgment was entered.

The plaintiff Stewart Paul filed a petition seeking to compel the Topeka Township Sewage District No. 2 to construct a lateral sewer line which would serve a tract of land lying south of a development referred to as Pauline or in the alternative to pay damages for failure to supply sewer service.

Topeka Township Sewage District No. 2 will be referred to herein as the defendant or as the sewage district.

The sewage district filed answer to plaintiff's petition admitting plaintiff's property was in the main sewage district but denying his property was in any lateral sewer district and denying he was legally entitled to service.

At a pre-trial conference by stipulation of the parties the following exhibits bearing upon this controversy were admitted in evidence: (1) A map showing the boundaries of the main sewage district, the areas covered by lateral sewer districts, and the areas not included in any lateral sewer district but within the main district; (2) A resolution by the governing body of the main sewage district, creating prescribed areas for three lateral sewer districts within the main sewage district as provided in K. S. A. 80-2012; and, (3) A resolution by the governing body spreading assessments against various tracts of land, including plaintiff's land, for costs of constructing the main, outfall and intercepting sewers in the main sewage district and spreading separate assessments for costs of constructing the separate lateral sewers in lateral sewer districts number 1, 2 and 3 as authorized by K. S. A. 80-2007 and 80-2012.

It was admitted at the pre-trial conference and it is admitted on appeal that plaintiff's property is in the main sewage district.

It was admitted at the pre-trial conference and it is admitted on appeal that plaintiff's property is not located within the described boundaries of any of the three lateral sewer districts as set forth in the resolution establishing them and as outlined on the map referred to above.

The main sewage district was created and established in January 1958 and the electors thereafter authorized construction of the

sewage system. Lateral sewer districts were created by a resolution of the township board in August 1958 as authorized by K. S. A. 80-2012 and 80-2003. Plaintiff's property was assessed for the costs of constructing the main sewer in the main sewage district. It is agreed for the purposes of this action that this was proper. In the assessment resolution, however, the governing body of the main sewage district also assessed plaintiff's property for construction of lateral sewers in lateral sewer district No. 2. Plaintiff and his predecessors in interest have paid sewer assessments for the main sewer and for the lateral sewers in lateral sewer district No. 2. There is no lateral sewer service presently available to plaintiff's property although the sewage system was completed and the funds raised by bond issue have been expended. Lateral sewer district No. 2 as outlined on the maps and in the resolution lies north of an area known as Pauline. Plaintiff's property lies south of Pauline. Pauline, as outlined on the maps and in the resolution, is in lateral district No. 1. Plaintiff's property is not contiguous or adjacent to any of the boundaries of lateral district No. 2 as outlined on the maps and in the resolution.

The main thrust of plaintiff-appellant's argument is that even though his property is not within the boundaries of any lateral sewer district described in the resolution creating these districts, his property was included in lateral district No. 2 by the assessment resolution. He contends the assessment resolution amended or superseded the prior resolution creating the lateral districts and extended the boundaries of lateral district No. 2 to include his property. The remedy he seeks in mandamus and in contract is premised upon the strength of this argument.

The defendant-appellee's argument, in summary, is the main sewage district is a creature of statute and the authority to create and enlarge lateral sewer districts is governed and limited by the statute. Stated in another way, a resolution to create a lateral sewer district as required by a specific statute cannot be amended or superseded by a later assessment resolution passed for the purpose of raising money to pay for construction.

Defendant further claims the construction of any lateral sewer lying outside the lateral sewer districts and any contract for the same are *ultra vires;* and, that mandamus cannot be used to compel construction of that which they have no legal right to do.

The appellant cites *City of Atchison v. Price,* 45 Kan. 296, 25 Pac. 605, as authority for his contention that the assessment ordinance

had the effect of extending the boundaries of a previously established lateral sewer district. We do not consider that case controlling. The decision arose under a statute existing in 1889 which was quite general in nature and did not specifically outline the manner of creating a district as outlined in the present statute.

The plaintiff first contends that the trial court erroneously entered summary judgment based upon a mistaken conception that appellant was required to introduce or present sufficient evidence at the pre-trial conference to sustain his cause of action. Some justification for plaintiff's contention appears in the letter from the judge announcing his decision and directing a journal entry to be prepared.

The circumstances under which entry of a summary judgment may be proper were set forth in *Brick v. City of Wichita*, 195 Kan. 206, 211, 403 P. 2d 964, as follows:

"A summary judgment proceeding is not a trial by affidavits, and the parties must always be afforded a trial when there is a good faith dispute over the facts. (*United States v. Kansas Gas and Electric Company*, 287 F. 2d 601 [10th Cir. 1961].) A motion for summary judgment cannot be made a substitute for a trial either before a court or jury, and a plaintiff who states a cause of action which entitles him to a trial by jury is entitled to have his case tried in that way and cannot be compelled to submit his evidence in the form of affidavits in resistance to a motion for summary judgment and have the issues determined by such motion. (*United States v. Broderick*, 59 F. Supp. 189 [D. C. Kan. 1945].)"

In *Jarnagin v. Ditus*, 198 Kan. 413, 417, 424 P. 2d 265, Justice O'Connor, speaking for this court, succinctly stated the basis upon which a summary judgment will stand in these words:

"When ruling on a motion for summary judgment, a court must resolve against the movant any doubt as to the existence of a genuine issue of material fact; the evidentiary material submitted by the party opposing the motion must be taken as true, and such party must be given the benefit of all reasonable inferences that may be drawn from such material." [Citing cases.]

In *Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 790, 420 P. 2d 1019, this court said:

"This court has now laid down a definite yardstick for the granting of such judgments. Generally it must appear conclusively that there remains no genuine issue as to a material fact and that one of the parties is entitled to judgment as a matter of law. A mere surmise or belief on the part of the trial court, no matter how reasonably entertained, that a party cannot prevail upon a trial will not justify a summary judgment where there remains a dispute as to a material fact which is not clearly shown to be a sham, frivolous or so unsubstantial that it would obviously be futile to try it. A party against whom a summary judgment is being considered must be given the benefit of all reasonable inferences that may be drawn from the facts under consideration." [Citing cases.]

In *Secrist v. Turley,* 196 Kan. 572, 575, 412 P. 2d 976, we stated:

"In the final analysis a court should not determine the factual issues on a motion for summary judgment but should search the record for the purpose of determining whether a factual issue exists. If there is reasonable doubt as to the existence of a material fact a motion for summary judgment will not lie. No matter how the explanation of the rule is phrased we always return to the language of the rule, there must be left 'no genuine issue of any material fact.'"

Whether the trial court applied erroneous reasoning to arrive at entry of a summary judgment is immaterial if there was indeed no genuine issue remaining as to any substantial fact material to plaintiff's action. We have repeatedly held wrong reasoning given for a correct judgment is not prejudicial error and will not justify reversal on appeal.

In *Smyth v. Thomas,* 198 Kan. 250, 257, 424 P. 2d 498, the Chief Justice speaking for this court expressed the foregoing rule thus:

". . . a judgment, however, correct in result, is not to be set aside on the ground it was arrived at through the process of erroneous reasoning. (*Kirkpatrick v. Ault,* 174 Kan. 701, 706, 258 P. 2d 262)."

In order to understand the questions presented on appeal some familiarity with the statute relating to the creation of township sewage districts is necessary. K. S. A. 80-2001 *et seq.* provide a method for creating and establishing a sewage district in a township. The township board is ex officio its governing body. The township board may create a sewage district by resolution published as provided by K. S. A. 80-2003. The governing body is then authorized to employ engineers to prepare plans and specifications for construction of main sewers and disposal of sewage for the main sewage district. These plans are to include "such lateral sewer districts together with an estimate of the cost of construction thereof as may be deemed immediately necessary."

When these plans and specifications are approved they shall be filed with the county clerk of the county in which the township is located and be available for inspection by all persons interested. Before any improvements are constructed as specified in these plans an election must be called in the main sewage district as provided in K. S. A. 80-2005. The method of assessment to pay bonds is outlined in the statute and includes notice to owners of the land affected and affords opportunity to make complaints.

Lateral sewer districts may be created by resolution as provided

in K. S. A. 80-2012 which specifically requires "taxes and special assessments for such lateral sewers shall be levied only against the property within such lateral sewer district."

The boundaries of a sewage district and of any lateral sewer district may be enlarged by filing a petition with the governing body of the district and in such case special assessments are levied against the added territory to pay a proportionate cost of all previous improvements usable by the territory added.

It is clear, under the posture of the case as it appeared on motion for summary judgment, plaintiff's property was in the main sewage district as it existed by the resolution required by K. S. A. 80-2003. It is equally clear his property was not included in the boundaries of any of the three lateral sewer districts established by the resolution required by K. S. A. 80-2012. His property was not furnished a lateral sewer under the plans and specifications of the engineers approved by the electors in the main sewage district. However, his property was included in the resolution assessing and levying costs of both the main sewers and the lateral sewers for lateral district No. 2. Plaintiff has paid all assessments from 1959 to the present time.

The central focal point of this appeal is whether, as a matter of law, property lying outside of lateral sewer districts may legally be drawn into and made a part of a lateral sewer district by resolution assessing and levying costs of a lateral sewer. We hold under the facts of this case it cannot.

A township sewage district is a quasi-municipal corporation. It is a subdivision of a township. A township is created by the state and has only such power and authority as may be conferred upon it by statute. (*Salt Creek Township v. Bridge Co.*, 51 Kan. 520, 33 Pac. 303.) Likewise a city is a creature of the legislature and exercises only such power as the legislature confers. (*La Harpe v. Gas Co.*, 69 Kan. 97, 76 Pac. 448.) A township sewage district is also limited to such power and authority as may be conferred upon it by statute. (*Bishop v. Sewer District No. 1*, 184 Kan. 376, 336 P. 2d 815.)

The statute authorizing the creation of township sewage systems provides in detail the manner in which the power to form lateral sewer districts may be exercised by the governing body. K. S. A. 80-2012 directs this be done by a resolution in the same manner as is provided in section 80-2003 which relates to the creation of a main sewage district. The latter section requires that the resolu-

tion describe the boundaries of the proposed area to be included. The resolution must be published for six days in the official county newspaper or for two consecutive weeks if published in a weekly newspaper.

The assessment resolution by which plaintiff claims to have been placed in lateral sewer district No. 2, or by which the original resolution was amended or superseded, does not comply with the requirements of K. S. A. 80-2012 and 80-2003 as to publication or description of boundaries. Other reasons for our decision appear in the statute.

The statute provides its own method for enlargement of boundaries of any sewage district or lateral sewer district. (K. S. A. 80-2013.)

The entire statute indicates an intention to require the property owners to pay only for their proportionate share of the benefits accruing from the construction of the lateral sewer in their own particular district.

It does not appear that the legislature desired to permit the governing body of a main sewage district to amend or supersede a resolution establishing lateral sewer districts by the simple expedient of including additional areas in their assessment resolutions.

For the foregoing reasons the resolution spreading assessments did not amend or supersede the resolution creating the lateral sewer districts and plaintiff's property is not in any lateral sewer district. K. S. A. 80-2012 in pertinent part provides:

". . . and upon the formation of such lateral sewer districts, the governing body of the sewage district shall have power to construct lateral sewers therein, and shall levy taxes and special assessments against the property in such lateral sewer districts, . . ."

It further provides:

". . . except that the taxes and special assessments for such lateral sewers shall be levied only against the property within such lateral sewer district, . . ."

We view the above statute as prohibiting the defendant sewer district from contracting and constructing a lateral sewer to plaintiff's property because it would lie outside of any lateral sewer district. Taxes to pay the costs of any lateral sewer are provided for by a levy against property in the lateral sewer district benefitted thereby. A lateral sewer to plaintiff's property would benefit no present lateral sewer district. A sewer to his property would not lie in any lateral sewer district.

In *City of Fort Scott v. Kaufman*, 44 Kan. 137, 140, 24 Pac. 64, in an analogous situation the court said:

"In this case the mayor and council determined to construct sewers by districts, and created sewer district No. 3, and provided for the construction of a certain number of lateral sewers therein, but further provided for the construction of a discharging sewer, with which these lateral sewers connected, but 2,591 feet of whose length was entirely outside the boundaries of sewer district No. 3 as they established that district, but its whole length was within the boundaries of the city. Whatever may be said of the inequitable operation of this statute, it seems that its meaning is so plain that serious doubts ought not to arise as to its application. In specific terms it provides that the costs and expenses of the construction of the sewer shall be assessed against the lots and pieces of ground contained in the district in which it is situated. The cost of that discharging sewer of 2,591 feet, that is expressly stated and agreed to be entirely and wholly outside the limits of sewer district No. 3, and is not in the district, cannot be assessed against that class of property in sewer district No. 3 that is taxable for that purpose. . . ."

Identical reasoning applies to the present case.

Now we turn to the question of whether mandamus is the proper remedy in the present case.

K. S. A. 60-801 reads:

"Mandamus is a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law."

A governmental officer cannot be compelled by mandamus to do an unauthorized act. (*Hawkins v. Gregory*, 138 Kan. 477, 26 P. 2d 247; *Sharpless v. Buckles*, 65 Kan. 838, 70 Pac. 886; 34 Am. Jur. Mandamus §§ 191, 199; 48 A. L. R. 2d 1222.)

Plaintiff's action to require defendant to construct a sewer must therefore fail when based upon mandamus. It must also fail if based upon enforcement of an implied or express contract with the township board to do an unauthorized act. Such a contract would be *ultra vires* and void. (*Salt Creek Township v. Bridge Co.*, supra.; *J. D. Adams Co. v. Dor Township*, 153 Kan. 623, 113 P. 2d 138.)

The alternative claim in plaintiff's petition is for damages caused by negligence of the governing body of the sewer district in erroneously assessing plaintiff's property. The plaintiff cites no case which holds that a quasi-municipal corporation such as a township sewage district may be liable in tort for the negligence of its governing body in failing to perform its administrative duties. It is quite generally held a municipality is not liable for negligent acts of its officers in the performance of a governmental function unless

such liability is expressly imposed by law. (*Wray v. City of Independence,* 150 Kan. 258, 92 P. 2d 84; *Rhodes v. City of Kansas City,* 167 Kan. 719, 208 P. 2d 275.)

In *Stolp v. City of Arkansas City,* 180 Kan. 197, 202, 303 P. 2d 123, it was said:

"The general rule is well established that where there is an exercise of power by a city or town which serves the general public at the expense of all without charge, the city or town is acting in a public or governmental capacity and is not liable for torts committed by its agents, servants, and employees in the furtherance of that activity." [Citing cases.]

The mistakes and omissions of the governing body of the sewage district with respect to the erroneous assessment might give right to an action to recover the amounts paid, but such acts were undertaken in their capacity as a governing body of the sewage district in the performance of a governmental function and no action in tort for negligence can be maintained.

Under the pleadings and facts stipulated by the parties, taken in the light most favorable to the plaintiff, against whom the motion for summary judgment was filed, no genuine issue of any fact remained which could be material to the outcome of the action. The defendant, a quasi-municipal corporation, as a matter of law, could not furnish sewer service to plaintiff's property. It was unauthorized by law to contract to furnish such service. It is not legally liable in tort for the negligent acts or omissions of its governing body in failing to carry out administrative duties of a governmental nature.

The judgment is affirmed.