No. 46,870

JOHNSON COUNTY SPORTS AUTHORITY, *Plaintiff*, v. ELWILL M. SHANA-
HAN, SECRETARY OF STATE OF THE STATE OF KANSAS, *Defendant.*

(499 P. 2d 1090)

Opinion filed July 19, 1972.

*A. C. Cooke,* of Cooke, North, Crossette and Dickson, of Prairie Village,
argued the cause, and *Thomas H. Bornholdt* and *George A. Burns,* of the same
firm, were with him on the brief for the plaintiff.

*Patrick L. Connolly,* Assistant Attorney General, argued the cause, and *Vern
Miller,* Attorney General, was with him on the brief for the defendant.

The opinion of the court was delivered by

PRAGER, J.: This is an original proceeding in mandamus brought
by the Johnson County Sports Authority as plaintiff to compel the
defendant Elwill M. Shanahan, Secretary of State, to correct an error
in the final enrolled version of House Bill 1715 which was passed
by the 1972 Kansas legislature. Specifically plaintiff seeks to compel
the secretary of state to insert the word "not" in section 1 (*f*) of
the statute and to publish the statute as corrected in the 1972 Session
Laws. In addition to relief by way of mandamus plaintiff prays this
court to render a declaratory judgment construing House Bill 1715
section 1 (*f*) as corrected.

The facts in this case are undisputed and are essentially as

follows: During the 1972 session of the Kansas legislature House Bill 1715 was introduced authorizing the creation of a county sports authority by the board of county commissioners in an urban area county. The county sports authority is granted the authority to construct and operate sport facilities, to issue revenue bonds, and to pledge revenues derived from the facilities and from a proposed entertainment tax to the payment of the revenue bonds. The proposed entertainment tax is to be levied by the board of county commissioners when requested by the sports authority. The impact of the entertainment tax is to fall upon persons engaged in the business of providing sleeping accommodations in connection with any motel, hotel or tourist court. The entertainment tax is calculated on the basis of a percentage of the gross rental receipts paid by *transient guests* for sleeping accommodations. In addition the entertainment tax is levied upon the gross receipts derived from the retail sales of food by persons engaged in the business of operating a cafe, cafeteria, lunchroom or restaurant.

The problem arose in this case because of a printing error in the final enrolled bill which was signed by the governor. In the engrossed bill, which was acted upon and passed by both houses of the legislature, section 1 (*f*) of the bill defined a "transient guest" as follows:

" 'Transient guest' means a person who occupies a room in a hotel, motel or tourist court for *not* more than thirty-one (31) days." (Emphasis supplied.)

The error in printing occurred when the engrossed bill was sent to the state printer by the chief clerk of the house. In preparation of the *enrolled* bill the state printer omitted the word "not" from section 1 (*f*) so that that section defined the term "transient guest" as follows:

" 'Transient guest' means a person who occupies a room in a hotel, motel or tourist court for more than thirty-one (31) days."

The chief clerk of the house did not notice the error in the enrolled bill and sent the enrolled bill with the printing error to the house and senate leaders and to the governor for their signatures and signed the same himself. The enrolled bill with the printing error omitting the word "not" in section 1 (*f*) was published in the official state paper on March 13, 1972.

Thereafter the Board of County Commissioners of Johnson County, Kansas, acting under the authority of House Bill 1715 established the Johnson County Sports Authority. The attorneys

for the Johnson County Sports Authority discovered the omission of the word "not" in the enrolled bill and became concerned as to the legality of the proposed revenue bonds and entertainment tax as authorized by the bill. The printing error was called to the attention of the secretary of state. The Johnson County Sports Authority requested the secretary of state to publish House Bill 1715 in the 1972 Session Laws with the inclusion of the word "not" in section 1 (f). The secretary of state declined to take this action. In lieu thereof the secretary of state inserted an editorial dagger between the words "for" and "more" in the definition of "transient guest" in section 1 (f) and on page 415 of the 1972 Session Laws at the conclusion of House Bill 1715 she caused to be placed a footnote calling attention to the printing error in the following language:

"In the printing of the enrolled bill, the word 'not' was omitted."

The Johnson County Sports Authority then brought this original proceeding in mandamus in the supreme court.

In this proceeding the plaintiff contends in substance that an order of mandamus should be issued directing the secretary of state to insert the word "not" in section 1 (f) of House Bill 1715 as published in the 1972 Session Laws. Plaintiff takes the position that an action in mandamus will lie to compel the secretary of state to exercise her editorial judgment under the provisions of K. S. A. 1971 Supp. 45-310 (d) in preparing the bound volumes of the 1972 Session Laws. Plaintiff further urges the court to render a declaratory judgment construing section 1 (f) of House Bill 1715 by including the word "not" at the point where it was erroneously omitted in the definition of "transient guest" in section 1 (f) of the final enrolled bill.

In her answer the secretary of state admits that she has the power to exercise editorial judgment in the preparation of the volumes of the 1972 Session Laws as provided by K. S. A. 1971 Supp. 45-310 (d). She specifically denies that such power includes the right to make changes or correct errors of omission in formally enrolled bills of the legislature. Finally the secretary of state contends that in her official capacity she did in fact exercise her editorial judgment as directed by K. S. A. 1971 Supp. 45-310 (d) by preparing the volumes of the 1972 Session Laws which have now been published and are in the process of distribution.

On the basis of the undisputed record before this court we

hold that the petition for a writ of mandamus should be denied and further that under the circumstances of this case this court has no original jurisdiction to enter a declaratory judgment construing section 1 (*f*) of House Bill 1715.

In arriving at this decision we have concluded that the statutory duty of the secretary of state to exercise editorial judgment in the preparation of the volumes of the session laws as provided by K. S. A. 1971 Supp. 45-310 (*d*) does not include the power to change the language of enrolled bills. On the contrary the secretary of state must copy the enrolled bills and publish them in the session laws as they are written without changes or corrections.

K. S. A. 1971 Supp. 45-310 covers the general subject of the publication of the session laws passed at each session of the legislature. It requires that such publication shall be accomplished under the direction of the secretary of state as follows:

"45-310. **Session laws; publication, printing, title and contents.** (*a*) All acts and joint resolutions passed at each session of the legislature shall be published in one or more volumes, under the direction of the secretary of state, as soon as practicable after the close of the session at which the same are passed. Such acts and joint resolutions shall take effect and be in force from and after such publication, unless otherwise specifically provided in such act or resolution. Such volume or volumes shall also have included therein an index, the veto messages of the governor, if any, all certificates that a bill or joint resolution or item or items of a bill have been approved notwithstanding the governor's veto, if any, and all concurrent resolutions adopted by the legislature, except such resolutions extending congratulations or making · a memorial for any decedent. Whenever any bill, act or resolution of the legislature shall provide that the same shall be effective from and after its publication in the statute book, the words "publication in the statute book" mean publication in the session laws of Kansas as provided in this section.

"(*b*) Such volume or volumes shall be titled and may be cited as "_____ Session Laws of Kansas." The blank shall be filled with the numeric designation of the year, in the case of regular sessions, and in the case of special sessions the blank shall be filled with the numeric designation of the year followed by the word "Special." Such title shall be printed on the back of each volume.

"(*c*) The sections in such volume or volumes shall be printed in the same manner as the 1967 Session Laws of Kansas, except (1) material added to an existing section of the statutes shall be printed in italic type, and (2) material deleted from an existing section of the statutes shall be printed in canceled type.

"(*d*) *The secretary of state is authorized and directed to exercise editorial judgment in preparation of such volume or volumes to the end that the purposes of this act are made effective.*" (Emphasis supplied.)

As pointed out above the plaintiff in this action in mandamus seeks to compel the secretary of state to exercise the editorial judg-

ment provided for in 45-310 (d). It is the position of the plaintiff that the term "editorial judgment" requires the secretary of state to change the enrolled form of House Bill 1715 by inserting the word "not" in section 1 (f) of that statute so that the 1972 Session Laws would show that section to read as follows:

" 'Transient guest' means a person who occupies a room in a hotel, motel or tourist court for *not* more than thirty-one (31) days." (Emphasis supplied.)

This raises the vital question of whether or not the secretary of state in exercising her editorial judgment in preparation of the session laws may publish acts of the legislature in a form other than that contained in the original enrolled bills on file in the secretary of state's office.

The answer to this question may be found in sections K. S. A. 1971 Supp. 45-301 (a) and 45-311, which were enacted along with 45-310 as a part of L. 1969, Ch. 249.

K. S. A. 1971 Supp. 45-301 (a) provides in part as follows:

"45-301 . . . (a) All bills and resolutions which shall have been finally passed or adopted by both houses of the legislature shall be enrolled by printing at the state printing plant on parchment paper, and such enrolled bills or resolutions shall be taken and held by the legislature and by each house thereof and by all courts to be the only proper enrolled bill or resolution . . ."

K. S. A. 1971 Supp. 45-311 states:

"45-311. **Certification of session laws.** The secretary of state shall prefix to each printed volume of the laws his certificate that the acts and resolutions therein contained are truly copied *from the original enrolled acts* and other official documents of the legislature, and specifying the date of the publication of such volume. The certificates mentioned in this act shall be evidence of the facts contained therein." (Emphasis supplied.)

It is clear from the provisions of 45-311 that the secretary of state in preparing the session laws is required to copy the original enrolled bills and to reproduce them without modification. There is nothing in the statutes which even suggests that the secretary of state has the authority to strike or modify provisions of enrolled bills or to add words not originally contained therein. We hold that the "editorial judgment" which the secretary of state is directed to exercise by K. S. A. 1971 Supp. 45-310 (d) refers only to the organization, preparation and publication of the volumes of the session laws and does not include the right to make changes in the enrolled bills. An exercise of "editorial judgment" by the secretary of state would reasonably include the determination of the general

format of the session laws and the inclusion of such matters as explanatory notes and an official directory of state officials. The secretary of state also has a wide discretion in the organization and classification of enrolled bills by subject matter under various chapter headings. Likewise the secretary of state may provide an appropriate index of bills by numerical number and a descriptive word index describing the various bills by subject matter.

The plaintiff's petition for a writ of mandamus should be denied here for two reasons. First, the defendant secretary of state has already exercised her editorial judgment in the preparation of the 1972 Session Laws as contemplated by K. S. A. 1971 Supp. 45-310. She has prepared and had printed the 1972 Session Laws with explanatory notes and an official state directory. The various enrolled bills as enacted by the 1972 legislature have been organized into chapters by subject matter. She has included the messages from the governor and an appropriate index. As required by K. S. A. 1971 Supp. 45-311, the secretary of state has prefixed to each printed volume a certificate that the printed acts contained therein are true and correct copies of the enrolled laws and resolutions which were passed by the 1972 legislative session. It is clear that the secretary of state has exercised her editorial judgment and therefore has performed her statutory duties pertaining to the publication of the 1972 Session Laws.

We further hold that mandamus is not a proper remedy here under the well recognized rule that mandamus will not lie to compel a public official to perform an unauthorized act. (*Wichita Public Schools Employees Union v. Smith*, 194 Kan. 2, 397 P. 2d 357; *Paul v. Topeka Township Sewage District*, 199 Kan. 394, 430 P. 2d 228; *Rosenthal v. State Board of Canvassers*, 50 Kan. 129, 32 Pac. 129.) As we have stated heretofore the secretary of state in preparing the session laws after each session of the legislature is required to include for printing bills in their enrolled form without deletions or additions. In the case at bar should we by mandamus compel the secretary of state to insert the word "not" in section 1 (f) of House Bill 1715, we would in effect require her to perform an act unauthorized by and contrary to statutory provisions. For these reasons the petition for mandamus must be denied.

This leaves for consideration the question whether this court should enter a declaratory judgment construing section 1 (f) of House Bill 1715. We hold that since there is no consequential

relief available here by way of mandamus this court has no original jurisdiction to enter a declaratory judgment construing the provisions of the statute or determining its constitutionality. The decisions of this court clearly establish the principle that the supreme court can take original jurisdiction under the declaratory judgment statute only where consequential relief could be obtained through quo warranto, mandamus or habeas corpus. (*Public Service Commission v. Kansas Gas and Electric Co.,* 121 Kan. 14, 246 Pac. 178; *Consumers Coöperative Ass'n v. Arn,* 163 Kan. 489, 492, 183 P. 2d 453.) By following these decisions we in no way deny the original jurisdiction of this court in an appropriate case to construe statutes where such construction is necessary to determine the nature or extent of some official duty sought to be enforced in an original proceeding in mandamus. (*Emporia Township v. Williams,* 149 Kan. 860, 89 P. 2d 919.) In fact we have construed K. S. A. 1971 Supp. 45-310 (*d*) here to determine the nature and extent of the duty of the secretary of state in exercising her "editorial judgment" in preparing the session laws.

We also think it important to emphasize that the declaratory relief sought is not appropriate in this case since there is no justiciable controversy between adverse parties. It is of course horn-book law that there must be at least two parties who can assert rights which have developed or will arise against each other before an actual controversy can exist which is justiciable under our declaratory judgment act. (*Boeing Airplane Co. v. Board of County Comm'rs,* 164 Kan. 149, 188 P. 2d 429; *Riley v. Hogue,* 188 Kan. 774, 777, 365 P. 2d 1097; *Fairfax Drainage District v. City of Kansas City,* 190 Kan. 308, 374 P. 2d 35.) In this case the defendant secretary of state has no actual interest adverse to the plaintiff in the construction or the validity of House Bill 1715. Any interest she might have is purely academic. In a declaratory judgment action there should be suitable adverse parties so that all issues pertaining to the construction or validity of a statute may properly be raised to avoid multiplicity of litigation.

We also wish to point out that the denial of original jurisdiction in this court to enter declaratory relief here does not preclude either of the parties from seeking relief in some court with appropriate original jurisdiction.

The motion of John Francis and White Haven, Inc. for leave to intervene in this case is denied for the reason that there is nothing in the determination of this case adverse to the interests of the proposed intervenors.

The petition for mandamus is hereby denied.