(884 P.2d 749)
No. 70,858

In the Matter of the Estate of IRENE MURDOCK.

Opinion filed November 23, 1994.

*Bernard T. Giefer, Jr.*, of Shepherd & Giefer, of WaKeeney, for the appellant.

No appearance by the appellee.

Before LEWIS, P.J., PIERRON, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

LEWIS, J.: In 1972, Irene Murdock died testate. In her will, she created the "Leslie and Irene Murdock Educational Scholarship Fund." The Fort Hays State University Endowment Association was named as trustee. In general, the trust was designed to provide scholarship funds for students from Ness County to attend Fort Hays State University. In this action, the trustee seeks to modify or release certain restrictions pursuant to K.S.A. 58-3607. The trial court denied the relief requested.

The record on appeal contains little, if any, evidence. We do not have, for instance, a copy of the decedent's last will and testament. At the very best, we have counsel reading into the record what purports to be the residuary clause of that will. Since no one appeared to oppose the application, we are not inclined to accept that reading as evidence. We are being asked to render an opinion on an issue about which very little is said or divulged. The state of the record limits our decision to a significant degree.

It appears that the trust was created by the residuary clause of Irene Murdock's will. Since we do not have access to the will, we cannot be absolutely certain of the language used. Apparently, the testator instructed her executor to establish "an educational scholarship fund similar to the Rebecca Dubbs scholarship fund." The "Rebecca Dubbs Memorial Fund" was created in 1939. We do have in the record a number of documents which purport to be the Rebecca Dubbs scholarship trust.

We also have in the record a document prepared by the executor of Irene Murdock's last will and testament. This document established the conditions of the trust. We have no way of determining whether the document is consistent with the wishes and desires of the decedent. This document was apparently drawn up some time after the death of Irene Murdock. The trustee, however, does not seek to reform the trust conditions.

Irene Murdock left the bulk of her estate to certain individuals for the period of their lifetimes. Upon the death of the life tenant, the property was to become a part of the residuary and, as a result, a part of the trust. It is apparent that for a good number of years, little, if anything, passed to the trust. However, the life

tenants are now deceased, and the trust appears to have a significant amount of money to expend.

The trustee filed this action to modify or repeal certain of the trust provisions.

The trust document provides that the trust assets are to be deposited in time accounts in Ness County banks or used to purchase Kansas municipal bonds. The trustee seeks more freedom of investment and asks to be released from the investment restrictions noted above.

The trust agreement provides that the trustee is to provide scholarships to graduates of Bazine High School, Utica High School, Ransom High School, and Ness City High School. These scholarships are to be rotating—the first year a student from Bazine High School will receive the scholarship, the next year it will be a graduate of Utica High School, the next year a graduate of Ransom High School, and the next year a graduate of Ness City High School. The following year, the cycle is to start all over again with a graduate of Bazine High School. The trust agreement goes on to provide that "no member of the family of a School Board member shall be eligible to receive the income." The trustee sought release from the provisions of the trust requiring rotating scholarships on an annual basis and prohibiting families of school board members from receiving trust funds.

The record consists of a conversation between the trial court and counsel for the trustee. No witnesses were called and no evidence was presented on any of the issues raised by the trustee.

The trial court, after hearing the comments of counsel, denied the application of the trustee and held as follows:

"1. The Court is unaware of any law that would allow the modification of provisions of the Educational Trust in the absence of circumstances that would constitute a frustration of the purpose of the Trust.

"2. The Application of the Fort Hays State University Endowment Association and evidence proffered herein do not establish that the Trust purpose has been frustrated and, therefore, the Application to release restrictions should be and is hereby denied."

We note that the attorney general was served with notice in this action as required by statute but filed a disclaimer of interest.

The net result is that not only was there no opposition in the trial court, only the appellant has filed a brief in this court.

## THE MERITS

For the reasons stated in this opinion, we conclude that the trial court erred in its interpretation of the law regarding removal and modification of trust provisions. However, despite this error, we are unable to reverse the decision of the trial court. We cannot reverse because under any standard one might wish to apply, the trustee offered no evidence to justify modification. Therefore, even though the trial court may have announced the wrong reason, it did not err in refusing to modify or release the trustee from the provisions in question.

Since the question of the applicable standard for modification of trust provisions is one of first impression, we will deal with it in this opinion for future application.

The trial court held that it could not modify the trust provisions "in the absence of circumstances that would constitute a frustration of the purpose of the Trust." The trustee suggests that this is the wrong standard, and we agree.

In 1973, Kansas adopted the Uniform Management of Institutional Funds Act, K.S.A. 58-3601 *et seq.*, which is controlling upon the issues involved.

K.S.A. 58-3607 deals with "[r]elease of restrictions on use or investments" and provides:

"(a) A restriction on the use or investment of an institutional fund imposed by the applicable gift instrument may be released, entirely or in part, by the governing board with the written consent of the donor.

"(b) If consent of the donor cannot be obtained by reason of the death, disability or unavailability, or impossibility of identification of the donor, *upon application of the governing board, a restriction on the use or investment of an institutional fund imposed by the applicable gift instrument may be released, entirely or in part, by order of the district court after reasonable notice to the attorney general and an opportunity for him or her to be heard, and upon a finding that the restriction on the use or investment of the fund is obsolete, inappropriate or impracticable.* A release under this subsection may not change an endowment fund to a fund which is not an endowment fund.

"(c) A release under this section may not allow a fund to be used for purposes other than the educational, religious, charitable, or other eleemosynary purposes of the institution affected.

"(d) The provisions of this section do not limit the application of the doctrine of *cy pres*." (Emphasis added.)

This statute controls, and we hold that a restriction in a trust of the nature presently before this court may be released "upon a finding that the restriction on the use or investment of the fund is *obsolete, inappropriate, or impracticable.*" (Emphasis added.) This is the standard which should have been applied by the trial court in dealing with the trustee's request for the release of the restrictions on investments. There is no requirement that a frustration of trust purpose be shown in order to release an investment restriction, and the trial court erred in concluding that such a showing was necessary.

The provisions of the Uniform Management of Institutional Funds Act would not apply to the trustee's application to remove the rotating scholarship requirement and the provision prohibiting scholarships from being given to families of school board members. The trustee takes the position that these restrictions frustrated the purpose of the educational trust since more money was now available than could be awarded.

This application seems to be an effort to apply the doctrine of cy pres. That is a recognizable doctrine in this state, and our Supreme Court recently examined the application of that doctrine as it now exists:

"The doctrine of cy pres permits a court to implement a testator's intent and save a gift to charity by substituting beneficiaries when the named charitable beneficiary is unable to take the gift. In order for the doctrine to apply, several conditions must be met. First, the gift must be to a charitable organization for a charitable purpose. *Second, it must be impossible, impractical, or illegal to carry out the donor's stated charitable purpose.* Finally, it must appear that the donor had a general charitable intent. The fundamental concept of the doctrine is that a donor may have a general charitable intent and that the particular charitable institution designated as recipient of the gift is only an agent for effectuating that gift. Therefore, when it becomes impossible for the gift to take effect exactly as the donor specified, the court must look for another agent, as nearly like the designated one as possible, that will receive the gift and effectuate the general intent expressed in the will or gift instrument." *In re Estate of Crawshaw,* 249 Kan. 388, Syl. ¶ 4, 819 P.2d 613 (1991).

Under the doctrine of cy pres, it must be impossible, impractical, or illegal to carry out the donor's stated charitable purpose.

The few facts we have available indicate that the doctrine is not applicable. There is no impossibility of the gift or trust taking effect, and it is not illegal to carry out the donor's stated charitable purpose. We conclude that under the facts shown, the doctrine of cy pres would not apply to entitle the trustee to a release from the two trust provisions now being discussed.

In any event, the trustee alleged that the restrictions frustrate the purpose of the educational fund. The trustee produced no evidence to prove that there was, in fact, any purpose of the educational fund being frustrated by the provisions in question. Neither do the allegations of the application allege facts which, if true, would meet the standard in question.

Having concluded that the trial court adopted the wrong standard in rejecting the application of the trustee, we still affirm the decision of the trial court. It is well established that a trial court's decision may be upheld if the ultimate decision was right, albeit for the wrong reason. *Bank of Kansas v. Davison*, 253 Kan. 780, 792, 861 P.2d 806 (1993).

As we have indicated, the trustee presented no evidence on which the trial court could have granted it relief under any standard. There were no witnesses called and no evidence proffered to show that the restrictions on investments in the trust were obsolete, inappropriate, or impracticable. There were no witnesses called and no evidence proffered to show that the rotating schedule of schools and the prohibition of awarding scholarships to families of school board members either frustrated the purpose of the trust or made it impossible, impractical, or illegal to carry out the donor's stated charitable purpose. There was a total failure of proof on the trustee's allegations, and based on the lack of evidence presented, the trial court had no reason or basis on which to grant the relief requested.

We deal here with eliminating provisions in a trust document established in 1972. We must assume that these provisions reflect the intent and desire of the donor. It seems obvious that courts should not rewrite a donor's trust agreement in the absence of compelling evidence to indicate that the provisions in question are "obsolete, inappropriate, or impracticable," "frustrate the pur-

pose of the trust," or make it "impossible, impractical, or illegal to carry out the donor's stated charitable purpose." In the absence of any evidence to this effect, the trial court had no choice but to deny the application. The elimination of restrictions and directions in a testamentary charitable trust should not occur unless the record shows that such action is necessary. In the instant matter, no such showing was made.

The only thing in the record that might support the allegations of the trustee are statements of its counsel. "Assertions or arguments of counsel before the trial court, the appellate court, or in an appellate brief are not evidence and do not remedy inadequacy in the record on appeal." *Kenyon v. Kansas Power & Light Co.*, 17 Kan. App. 2d 205, Syl. ¶ 3, 836 P.2d 1193 (1992). Therefore, we disregard the statements of counsel since such statements are not evidence.

It is possible that the trustee concluded that since there was no opposing party, it was not required to prove its allegations but could proceed as if it were taking a default judgment under the civil code. We do not agree.

These proceedings were conducted under the probate code and not under the civil code. It is our judgment that the concept of default is not well defined under the probate code. We conclude that the default of parties, for lack of a better word, does not relieve an applicant in a probate proceeding of the burden of proof.

K.S.A. 59-2213 provides:

"No judgment or decree shall be rendered in a probate proceeding *without proof.* The court shall have control of its orders, judgments, and decrees for thirty days after the date of the rendition thereof. Thereafter such orders, judgments, and decrees may be vacated or modified as provided by K.S.A. 60-260(b) of the code of civil procedure." (Emphasis added.)

Before the adoption of the current probate code, issues litigated under the former code were seldom considered to be final. In 3 Bartlett, Kansas Probate Law & Practice § 1161, p. 15 (rev. ed. 1953), Bartlett states one reason for the old rule was that probate proceedings were frequently ex parte and judgments were rendered without notice and without proof. Bartlett then states:

"The probate code has wholly removed the . . . reason assigned (1) by making probate proceedings adversary from the beginning, (2) by providing for adequate notice of hearing in all cases to all interested parties, and (3) *by providing that no judgment or decree shall be rendered in a probate proceeding without proof.*" (Emphasis added.)

In 3 Bartlett, Kansas Probate Law & Practice § 1194, the following is offered:

"No judgment or decree shall be rendered in a probate proceeding without proof. . . . One reason assigned by the courts for allowing collateral attacks upon probate judgments and decrees is that 'the question may be decided by default, although the practice is a bad one, without hearing and without any actual notice.'

"Probate proceedings are, at least for the most part, proceedings *in rem, and proof should be offered to sustain them. The mere fact that particular evidence is uncontradicted does not require the trial court to make a finding in accordance therewith.*" (Emphasis added.)

It is apparent from a reading of Bartlett that he believed the legislature had a definite reason for requiring that no judgment or decree should be rendered in a probate proceeding without proof. That rule is stated clearly by statute, and we believe it renders the concept of the default judgment nonexistent under the probate code.

In addition to the above, there is the rule that all probate proceedings are adversarial. *In re Estate of Reed,* 157 Kan. 602, 612, 142 P.2d 824 (1943); *Egnatic v. Wollard,* 156 Kan. 843, 854, 137 P.2d 188 (1943). See K.S.A. 59-2237; K.S.A. 59-2208. The concept of all probate hearings being adversarial hearings indicates to us that the default of an interested party does not change the nature of the hearing. Regardless of the issue and of the default of interested parties, proof is required before the proponent can carry the burden of proof.

It has been held that a waiver of notice by a party does not relieve the proponent of the burden of proof: "[The waiver of notice by a party] did not waive any substantive rights possessed by appellant and left appellee to sustain the burden of proving the will was entitled to probate under existing provisions of the probate code." *In re Estate of Reed,* 157 Kan. at 613.

Reasoning by analogy from this decision, it seems reasonable to us to conclude that the default or failure of a party to attend

a hearing does not relieve the proponent of the burden of proving the allegations which the proponent contends should carry the day.

We hold that, under the probate code, no judgment or decree can be rendered without proof. This statutory provision is not diluted or rendered irrelevant by the default of an interested party. Therefore, the mere fact that no one appeared to contest the trustee's application did not relieve the trustee of the burden of proving its application by substantial competent evidence.

On appeal, the trustee appears to argue that the restrictions in question were not contained within the four corners of the last will and testament of Irene Murdock. This argument would be the basis of an action to reform the trust instrument if it is, in fact, supported by the evidence. The problem at this juncture is that we do not have in the record on appeal a copy of the last will and testament of Irene Murdock. Further, this issue was neither pled nor raised to the trial court, and no evidence was offered to sustain it. For those reasons, we consider this argument to be without merit.

The absence of evidence proving the allegations of the application left the trial court with no authority to grant the application. While the trial court did attempt to impose an incorrect standard, its decision to deny the application was nonetheless correct.

Affirmed.