(915 P.2d 129)
No. 73,354

LYDIA SAUCEDO, *Appellee*, v. RAY WINGER, M.D., *Appellant*.

—

Opinion filed April 19, 1996.

*David M. Traster* and *Stephen M. Kerwick*, of Foulston & Siefkin L.L.P., of Wichita, for appellant.

No appearance by appellee.

Before RULON, P.J., ROYSE, J., and STEPHEN D. HILL, District Judge, assigned.

RULON, J.: Ray Winger, M.D., defendant, appeals an order of the district court approving a settlement agreement between his malpractice insurer and the plaintiff. Defendant argues the court erred in approving the settlement because his insurance policy did not expressly grant the insurer the right to settle without defendant's approval and he expressly objected to the settlement. We reverse and remand with directions.

## FACTS

The facts of this case are not in dispute. This is the second time this case has been presented to the Kansas appellate courts. The background facts leading up to this dispute are detailed in *Saucedo v. Winger*, 252 Kan. 718, 850 P.2d 908 (1993).

Plaintiff Lydia Saucedo originally sued defendant for alleged medical malpractice surrounding the death of her husband, Pablo. The case was tried to a jury which found that, although defendant's actions fell below the required professional standard of care, his actions or lack thereof, did not cause or substantially contribute to Pablo's death. Consequently, the trial court entered a verdict in favor of defendant.

Plaintiff sought to set the judgment aside, claiming juror misconduct. The district court denied her request for a new trial and this court affirmed that decision in an unpublished opinion. Our Supreme Court granted review and reversed and remanded for a new trial. 252 Kan. at 733.

On remand, before a new trial could be held, defendant's malpractice insurance carrier, Medical Protective Company (Medpro), entered into a settlement agreement with plaintiff. Defendant filed a motion asking that the settlement not be approved on the basis that Medpro was not a party to the suit and did not have authority to settle. The district court rejected defendant's argument and approved the settlement. The insurance company agreed to settle for $145,000. The policy limit was $200,000.

## THE SETTLEMENT AGREEMENT

"Interpretation of an insurance policy, like the construction of any written instrument, is a question of law. . . . The appellate court's review of questions of law is unlimited." *Levier v. Koppenheffer*, 19 Kan. App. 2d 971, 976, 879 P.2d 40, *rev. denied* 255 Kan. 1002 (1994). When an insurance policy is not ambiguous, the court may not make another contract for the parties. *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992). Whether ambiguity exists in a written instrument is a question of law to be decided by the court. 251 Kan. at 691.

"The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties. Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear." 251 Kan. at 693.

"The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Farm Bur. Mut. Ins. Co. v. Winters*, 248 Kan. 295, Syl. ¶ 1, 806 P.2d 993 (1991). "A contract of insurance should not be construed through the magnifying eye of the technical lawyer but rather from the standpoint of what an ordinary [person] would believe it to mean." *Wheeler v. Employer's Mutual Casualty Co.*, 211 Kan. 100, 104-05, 505 P.2d 768 (1973).

The outcome of this case turns on what authority the insurance carrier, MedPro, did or did not have under the terms of the policy with defendant. The policy reads in material part:

"In Consideration of the payment of the premium, receipt of which is hereby acknowledged, and subject to the limits of liability and other terms of this policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured or his estate.

. . . .

"B. Upon receipt of notice the Company shall immediately assume its responsibility for the defense of any such claim. Such defense shall be maintained until final judgment in favor of the Insured shall have been obtained or until all remedies by appeal, writ of error or other legal proceedings deemed reasonable and appropriate by the Company shall have been exhausted at the Company's cost and without limit as to the amount expended. However, the Company shall not be obligated to defend any claim after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

. . . .

"2. The Insured shall not (a) make any hold harmless agreements or contract any expense nor voluntarily assume any liability in any situation nor (b) make or contract any settlement of a claim hereunder, except at his own cost and responsibility, without the written authorization of the Company. The Insured shall at all times fully cooperate with the Company in any claim hereunder and shall attend and assist in the preparation and trial of any such claim."

In district court, defendant argued that most insurance policies explicitly provide that the insurer has the right to settle without the

insured's consent. This policy, however, does not have such a provision. According to defendant, Medpro was without authority to settle this action without defendant's consent and, consequently, the district court should not have approved the settlement. Importantly, Medpro did not intervene and offered no argument either in district court or on appeal. The only opposing argument in the district court came from plaintiff, whose position was that any dispute over the terms of the insurance policy were between defendant and Medpro and that she had no interest in such dispute because she had a valid settlement agreement with the insurer. Plaintiff further argued that the policy provides both express and apparent authority for Medpro to settle this suit and all that was left for the district court to do was to approve the attorney fees.

Under the terms of the policy before us, defendant could not make any hold harmless agreements or voluntarily assume liability. Defendant could not, except at his own expense, settle without the written consent of Medpro. Finally, defendant was required to fully cooperate with Medpro in any claim and attend and assist in the preparation of any trial.

Medpro, in consideration of payment of the premium paid by defendant, was required to assume the responsibility to defend any claim which was covered by the policy. Such defense was required to be maintained until a judgment favorable to defendant was obtained or until all appeals had been exhausted. However, Medpro was not obligated to defend any suit after the extent of the company's liability had been exhausted by payment of judgment or settlement.

Clearly, the policy before us does not give Medpro the express right to settle without defendant's consent. The policy does not specifically require that defendant give his consent to any settlement. This policy, however, specifically prohibits defendant from settling without Medpro's consent unless he assumes all responsibility for such a settlement.

There are several treatises that discuss the issue before us in general terms.

One treatise states:

"An insurance company is free to exercise its own judgment as to whether to enter into a settlement. It can, therefore, absent an express policy provision to the contrary, settle a case despite the insured's request that it not do so. The only limitation is that the insurer act in good faith." 1 Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 5:03, pp. 306-07 (3d ed. 1995).

Interestingly, none of the cases this source relies upon states such a legal proposition. All the cited cases involved situations where the insurance policies *expressly* gave the insurer the right to settle within policy limits at the insurer's discretion. See *Ins. Co. of North America v. Medical Protective Co.,* 768 F.2d 315 (10th Cir. 1985); *Puritan Ins. Co. v. Canadian Universal Ins. Co.,* 586 F. Supp. 84 (E.D. Pa. 1984), *rev'd on other grounds* 775 F.2d 76 (3d Cir. 1985); *Mitchum v. Hudgens,* 533 So. 2d 194 (Ala. 1988); *Transit Casualty Co. v. Spink Corp.,* 94 Cal. App. 3d 124, 156 Cal. Rptr. 360 (1979); *Sharpe v. Physicians Protective Trust,* 578 So. 2d 806 (Fla. Dist. App. 1991); *Emp. Surplus Line Ins. v. City of Baton Rouge,* 362 So. 2d 561 (La. 1978); *Olson v. Union Fire Ins. Co.,* 174 Neb. 375, 118 N.W.2d 318 (1962); *Feliberty v. Damon,* 72 N.Y.2d 112, 531 N.Y.S.2d 778, 527 N.E.2d 261 (1988); *Marginian v. Allstate Ins. Co.,* 18 Ohio St. 3d 345, 481 N.E.2d 600 (1985).

Similarly, 7C Appleman, Insurance Law and Practice § 4711, pp. 367-69 (1979) states:

"It was early stated that an insurer has the right to make a compromise or settlement of any claims against the insured, and that it is not bound to consult the interests of the insured to its own prejudice. The law favors settlement without recourse to litigation.

"Liability insurance contracts have been held to give the insurer absolute authority to settle claims within the policy limits, and the insured has no power either to compel the insurer to make such settlements, or to prevent it from doing so."

Another authority notes:

"[C]ertain types of liability policies, such as medical malpractice and similar professional liability policies, may require the consent of the insured to the insurer's proposed settlement. This gives the insured a greater role in the settlement process. The 'consent' requirement is specifically designed for this purpose because claims arising out of professional negligence or misconduct do not only result in

judgments or settlements against professionals but may also affect the professionals's reputation and thereby his future livelihood. . . .

. . . .

"In the absence of a provision giving the insured the right to consent to the settlement, the insured cannot complain if the insurer settles the claim within policy limits even though the claim is groundless, false, or fraudulent." 1A Long, The Law of Liability Insurance § 5A.01, pp. 3-4 (1993).

Again, the cases cited for the principle that the insured cannot complain if the insurer settles for equal to or less than policy limits do not support that position. In these cases the insurance policy in question had *express* language giving the insurer the right to settle at its discretion. See *Martin v. Levinson*, 409 N.E.2d 1239 (Ind. App. 1980); *Marginian*, 18 Ohio St. 3d 345. Long also notes that most medical malpractice policies contain provisions requiring the insurer to obtain the insured's consent prior to settling with a plaintiff. 2 Long, The Law of Liability Insurance § 12.05[2], p. 12-99 (1993).

There is, however, one reported case that supports the position that an insurer can settle a claim with a plaintiff even though the policy does not give the insurer the express power to do so. In *Kaudern v. Allstate Insurance Company*, 277 F. Supp. 83 (D.N.J. 1967), the plaintiff sued his insurer Allstate, alleging it had improperly investigated a case arising out of an automobile accident in which the plaintiff was involved.

After the initial investigation, Allstate determined that this was a "no liability" case. Allstate, however, was obligated under the terms of its policy to provide legal assistance to its insured in the matter.

During two settlement conferences, after receiving statements of damages, medical reports, and depositions, Allstate refused to make any contribution towards any settlement. Allstate's insured was not informed of the existence of these conferences. Subsequently, the injured parties sent a letter to the attorney hired by Allstate and offered to settle for $10,000, Allstate's policy limits. Allstate did not answer the offer or inform its insured of the offer. Just prior to trial, Allstate offered to settle for $5,500. The offer was rejected. The case subsequently went to trial and a verdict was

entered against Allstate's insured for damages totaling $175,000. Allstate appealed the decision, lost, and then made payment of $24,575 on behalf of its insured. The payment consisted of its $10,000 policy liability limit plus interest.

The insured then sued Allstate, alleging that Allstate exercised bad faith in the preparation, investigation, and settlement negotiations which resulted in a judgment greatly in excess of the policy limits. The court discussed the two competing standards of conduct in judging an insurer's action in deciding whether to settle a case—the negligence theory and the bad faith theory. At the start of its analysis of the insurer's duty, the court stated:

"The problems in this area arise from the standard clause in a liability insurance policy, present here, which provides that the insurer will defend in the name of and on behalf of the insured any claims for injuries to persons by reason of the operation of the motor vehicle owned by the insured. *This clause naturally encompasses the negotiation of any settlement claim prior to trial.*" (Emphasis added.) 277 F. Supp. at 87.

*Kaudern* is distinguishable for several reasons. First, the issue of whether Allstate had the right to settle was not at issue; thus, the above highlighted sentence is dicta. Second, the trial court made this statement without citation to any authority. Third, nowhere in the case were the actual terms of the policy enumerated. Last, this involved an automobile liability policy, and if Allstate had settled there would be virtually no financial impact on its insured.

We believe the rule is more appropriately stated as, where an insurance policy explicitly reserves the right to settle to the insurer, an insured cannot complain that the insurer settles or refuses to settle within policy limits absent a showing of bad faith or negligence on the part of the insurer. However, where the policy requires the consent of the insured prior to entering into a settlement with the plaintiff, the insured should not be allowed to withhold consent except at his or her own risk. See 1 Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 5.03, p. 307 (3d ed. 1995).

The question remains, what rule applies where there is no policy language expressly giving either the insurer or the insured the express right to settle?

A somewhat analogous situation was presented in *Lieberman v. Employers Ins. of Wausau*, 84 N.J. 325, 419 A.2d 417 (1980). In *Lieberman*, a physician brought an action against his medical malpractice liability insurer, alleging the insurer settled a claim against him without his consent in violation of the terms of the policy. The facts of that case show that the policy expressly provided that the insurer was empowered to investigate and negotiate settlement of any claim with written consent of the insured.

Initially, Lieberman gave his consent for the insurer to discuss settlement with the plaintiff. However, Lieberman subsequently obtained information that indicated that the plaintiff was not injured to the extent claimed. Lieberman then sent a certified letter to the insurer withdrawing his consent to settle and expressing his wish that the case proceed to trial. The insurer replied that because negotiations had already been commenced, it was unable to comply with Lieberman's request. Employers subsequently settled the case with the plaintiff.

At trial, Employers argued that it had relied on Lieberman's initial consent and was not required to accede to any attempt to revoke said consent. Therefore, its settlement with the plaintiff was proper.

On appeal, in reviewing an insured's right to withdraw his or her consent to settle, the court concluded:

"When the insurance contract calls for the consent of the insured as a condition for settlement but is silent as to the irrevocability of that consent, we must be guided in the interpretation of the insurance contract by the overriding fiduciary responsibilities of the insurer. In terms of whether the insured has the contractual right to revoke a consent once given, our interpretation of the insurance policy should be harmonized with the fundamental notion that the insurer acts as a fiduciary for the insured and must in good faith be responsive to the insured's interests. [Citations omitted.] . . .

"In this case, it should be emphasized that the insurance contract contained no express provision that would either render the insured's consent to settlement irrevocable or prevent such a consent from being withdrawn once it has been given. The omission of such an express provision in a policy which explicitly requires the insured's consent to settle creates at the very least an ambiguity as to the revocability of an insured's consent. That ambiguity is to be resolved in favor of the insured. [Citations omitted.]

"We therefore hold that consent of the insured to authorize the insurer to effect a settlement is revocable in the absence of a contrary provision." 84 N.J. at 336-37.

As we understand, the New Jersey court said that if the insurance policy is silent on an issue of consent to settle or consent to withdraw a consent to settle, the interpretation must be resolved in favor of the insured.

We note that in *Harrison v. Long*, 241 Kan. 174, 734 P.2d 1155 (1987), a physician, Dr. Long, argued that certain provisions of the Health Care Provider Insurance Act, K.S.A. 40-4301 *et seq.*, were unconstitutional. Specifically, Dr. Long argued that the provision of the statute authorizing the Fund to settle with a plaintiff, without the health care provider's approval, after the primary insurer had tendered the policy limits of its liability, deprived him of a property right and was a denial of his right to due process of law. The *Harrison* court concluded that the Kansas Constitution did not require that a plaintiff's action be allowed to continue to trial to allow the defendant to vindicate himself or herself. Thus, there was no property right. 241 Kan. at 179. The court further concluded that the Act provides a procedural framework that allows the physician an opportunity to represent his interest to the court at a settlement hearing, thus maintaining due process of law. 241 Kan. at 181. Finally, the court found that where the primary insurer had settled for its policy limits, the physician could not complain that the Fund settled with the plaintiff because the State had a significant overriding countervailing interest in making sure that there was adequate liability insurance available to health care providers in the state. The *Harrison* court said:

"It is the public policy of the State to assure an adequate supply of health care providers and provide protection to patients who may be injured as a result of medical malpractice. Under the Act, it is the Fund, not the provider, which is responsible for paying any difference above the coverage of liability insurance. It is, therefore, implicit in the Act that the provider relinquish his right to prevent a settlement. To allow physicians to control the defense of malpractice claims against them and reach their own decisions to continue or to settle the action would undermine the whole purpose and the financial structure of the Act." 241 Kan. at 181.

*Harrison* is also distinguishable from the facts presented here. In *Harrison* the question involved the Fund's ability to settle with a plaintiff when the primary insurer had already tendered the policy limits. Language in the opinion suggests that Dr. Long's policy with his insurer gave the insurer the exclusive right to settle at its discretion. See 241 Kan. at 180. Here, Medpro has not tendered its policy limits. Also, in *Harrison* there was a distinct public policy in protecting the Fund against actions that could lead to its financial downfall. Here, Medpro is not a state-created fund, and there is no significant, countervailing, or overriding interest in protecting it.

In the final analysis, this case boils down to a simple matter of contract interpretation. As stated above, if the language is ambiguous, the policy must be interpreted in favor of the insured—in this case, defendant. The policy at issue simply does not say if Medpro has the exclusive right to settle and consequently must be interpreted to mean that Medpro cannot settle for less than the policy limits without the consent of defendant. This court is not free to insert terms and conditions that the parties did not provide for themselves. See *Koehn v. Central National Ins. Co.*, 187 Kan. 192, 196-200, 354 P.2d 352 (1960).

At the settlement hearing, plaintiff argued that Medpro had apparent authority to settle this case and therefore the district court should approve the settlement. However, faced with defendant's expressed opposition to settlement of the case prior to and at the settlement hearing, plaintiff could not reasonably rely on Medpro's apparent authority. As such, defendant cannot be estopped from challenging the settlement. See *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 382-83, 855 P.2d 929 (1993).

Reversed and remanded with directions that the district court vacate the order which approved the settlement between plaintiff and Medpro.

ROYSE, J., dissenting: I respectfully disagree. I believe the majority has incorrectly decided to address the merits of Saucedo's appeal.

Numerous appellate decisions make clear that "it is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matter in issue before the court." *Thompson v. Kansas City Power & Light Co.*, 208 Kan. 869, 871, 494 P.2d 1092, *cert. denied* 409 U.S. 944 (1972). In a case recently issued, the Supreme Court stated:

"[I]t is the function of a judicial tribunal to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive." *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, Syl. ¶ 1, 912 P.2d 716 (1996).

The requirement of a real controversy presupposes that "there must be at least two parties who can assert rights which have developed or will arise against each other." *Johnson County Sports Authority v. Shanahan*, 210 Kan. 253, 259, 499 P.2d 1090 (1972).

In my view, this case fails the criteria described in *Duffy*: (1) This case does not present a controversy relative to the legal rights of the parties actually involved in the case; and (2) the majority opinion does not adjudicate those rights in a manner that is operative, final, and conclusive.

With regard to the first criteria, the only parties to this case are Saucedo and Winger. Winger has never filed any motion to bring Medpro into this action. Saucedo did not appear in this appeal.

Winger asserts the only issue before this court is whether Medpro has the right to settle Saucedo's claim without Winger's approval. Medpro is not a party to this action. Winger has not asserted that Saucedo must return the money paid to her, a fact which likely explains Saucedo's decision not to file a brief in this appeal. While there may be a dispute about rights in this case, there is no dispute presented in this appeal about the rights of the parties involved in this particular case.

Perhaps even more telling is the fact that the majority opinion does not adjudicate the rights of the parties in a manner that is operative, final, and conclusive. First, the majority opinion simply directs the district court to vacate the order approving settlement.

There is no suggestion that Saucedo must return the money to Medpro (which has not asked that its money be returned).

Second, Winger asserts, without citation to the record, that the settlement has damaged him because it has been reported to a national data bank. Winger asserts this report to the data bank will cause him monetary loss and harm his reputation. The majority opinion does nothing about that entry in the data bank. The majority opinion does not and cannot order Medpro—a non-party to this case—to delete the alleged entry in the data bank.

Finally, the majority opinion leaves the district court with a real puzzle. After it deletes the order approving settlement, as directed by the majority opinion, what is the district court to do? Winger claims in his brief that he wants his day in court on the merits. Must the district court schedule a trial that Saucedo does not want so that Winger can "vindicate himself"? The majority opinion simply leaves the district court case file in limbo. It does not produce an operative, final, or conclusive result.

Winger asserts this court should address the merits of his appeal because interpretation of the policy language is an "area of continuing public interest." Before any policy language is interpreted, it would seem reasonable that the policy be admitted into evidence in the case. The policy supposedly at issue here has not been admitted into evidence. It is supported in the record only by an assertion of counsel in his brief to the district court. Assertions of counsel before the trial court, appellate court, or in an appellate brief are not evidence. *In re Estate of Murdock*, 20 Kan. App. 2d 170, Syl. ¶ 5, 884 P.2d 749 (1994). Even more important, this court should decide issues of public interest after hearing both sides of a dispute, not on the basis of the brief from only one side.