(879 P.2d 40)
No. 70,830

ALEX LEVIER, *Plaintiff/Appellee,* v. JEFFREY S. KOPPENHEFFER, *Defendant,* and AETNA CASUALTY & SURETY CO., *Garnishee/Appellant.*

Petition for review denied 255 Kan. 1002 (1994).

972

*Ronald D. Heck* and *David N. Tulbert*, of Heck & Sheppeard, P.A., of Topeka, for the appellant.

*John F. Stites*, of Stites, Hill, Wilson & Knopp, of Manhattan, for the appellee.

Before BRISCOE, C.J., PIERRON, J., and CARLOS MURGUIA, District Judge, assigned.

MURGUIA, J.: Following an automobile accident, Alex Levier secured a judgment against Jeffrey Koppenheffer for $600,000, an amount far in excess of Koppenheffer's $100,000 single limit liability insurance policy. In satisfaction of the judgment, Koppenheffer assigned to Levier any cause of action for bad faith or negligence that Koppenheffer might have against his insurer, AEtna Casualty and Surety Company (AEtna).

Levier commenced a garnishment proceeding against AEtna. The court found that AEtna had acted with negligence in its handling of the liability claims against Koppenheffer and entered judgment against AEtna for $600,000 plus interest. AEtna appeals from the district court ruling.

On October 1, 1988, a car driven by Jeffrey Koppenheffer suddenly crossed the highway's center line and collided head-on with a truck driven by Alex Levier. Levier was seriously injured in the accident, as was Koppenheffer's passenger, Vanessa Cartwright. Levier's vehicle, which was owned by his brother, was totally destroyed.

Koppenheffer's insurer, AEtna, investigated the accident within 30 days of its occurrence and concluded that the personal injury

claims of Cartwright and Levier would probably exceed the limits of Koppenheffer's $100,000 single limit insurance policy. Furthermore, AEtna determined that Koppenheffer was 95-100% responsible for the accident.

In November 1988, AEtna sent a letter to Koppenheffer notifying him that the claims from the accident could potentially exceed the limits of his insurance policy. The letter further advised Koppenheffer that he might want to retain his own attorney to represent him in the matter.

Also in November, AEtna wrote to its private counsel and asked for advice on how to proceed in settling the multiple claims against Koppenheffer. The attorney's response outlined several possible approaches to settling the claims and reminded AEtna that "[w]hen faced with the prospect of excessive claims in light of limited policy limits, insurance companyies [sic] must exercise due care and good faith in settling the claims. In short, the insurance company must act without negligence."

In January 1989, AEtna settled the property damage claim by paying Levier's brother $3,100, the total value of his truck at the time of the accident. AEtna sent a letter to Koppenheffer notifying him of the property damage settlement.

In March 1989, AEtna prepared a detailed intermediate report concerning the Koppenheffer accident. The report stated that Koppenheffer was 95-100% at fault for the severe injuries suffered by Levier and Cartwright. The liability value of Levier's claim was estimated to be $2,120,000, and the liability value of Cartwright's claim was estimated to be $49,965.67. The report recommended that both personal injury claimants be offered $25,000 and that the remainder of the policy be paid into the district court in an interpleader action.

In March 1989, AEtna made settlement offers of $25,000 each to Levier and Cartwright. AEtna received a response from Levier's attorney offering to settle all claims against Koppenheffer for $100,000. AEtna did not respond to Levier's settlement offer, nor did it notify Koppenheffer of the offer until June 1989.

In April 1989, Cartwright accepted the $25,000 offer and signed a release of all claims. Following Cartwright's settlement, AEtna paid the balance of its policy, which was $71,900, into the district

court in an interpleader action. This sum was eventually paid to Levier on his claim.

In October 1990, Levier secured a consent judgment against Koppenheffer for $600,000. Koppenheffer later assigned any and all of his claims against AEtna to Levier. Levier filed a garnishment action against AEtna for $600,000 in the Geary County District Court.

In a memorandum decision, the district court found that AEtna was negligent in settling the relatively small claims of the truck owner and Cartwright, while refusing to settle the large claim of Levier. Furthermore, the court found that AEtna's settlement with Cartwright was an act of preferential treatment that was not in the best interests of Koppenheffer. The court stated that AEtna exhibited a lack of care in controlling offers and acceptance that was confusing and negligent.

The court also found that AEtna was negligent in handling Levier's offer to settle for $100,000 by not conveying that offer to Koppenheffer for three months. Furthermore, the court said AEtna was negligent in not considering the best interests of Koppenheffer or allowing him to participate in the negotiations.

In reaching its decision, the district court interpreted certain provisions of the insurance contract between Koppenheffer and AEtna. That contract covers Koppenheffer with a single limit liability of $100,000. The limit of liability provision of the contract states:

"A. If separate limits of liability for bodily injury and property damage liability are shown in the Declarations for this coverage:

1. The limit of liability for 'each person' for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident.

2. Subject to the above limit for 'each person,' the limit of liability shown in the Declarations for 'each accident' for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

3. The limit of liability shown in the Declarations for 'each accident' for property damage liability is our maximum limit of liability for all damage to property resulting from any one auto accident.

"B. If a single limit of liability for bodily injury and property damage liability is shown in the Declarations for this coverage, this is our maximum limit of liability for all damages resulting from any one auto accident.

"We will apply the limit of liability shown in the Declarations to first provide the separate limits required by the Statutes of the State of Kansas, as follows:

1. $25,000 for bodily injury or death of one person in any one auto accident;
2. $50,000 for bodily injury or death of two or more people in any one auto accident; and
3. $10,000 for injury to or destruction of property of others in any one auto accident.

This provision will not change our total limit of liability.

"C. The applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:

1. Covered persons;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident."

Once an insurer steps into the negotiations between its insured and an injured claimant, the insurer must exercise due care to protect the rights of its insured. *Bennett v. Conrady*, 180 Kan. 485, 489, 305 P.2d 823 (1957). An insurer shall be liable for the full amount of its insured's resulting loss, even if that amount exceeds the limits of the insurance policy, for negligence or bad faith in defending or settling actions against its insured. 180 Kan. 485, Syl. ¶ 3.

The district court found that AEtna was negligent in two respects: its settlement of claims exhibited preferential treatment for Cartwright, and it failed to timely advise Koppenheffer of AEtna's initial settlement offer. Each of these findings will be examined separately in this analysis.

The first issue raised on appeal is whether AEtna was guilty of bad faith or negligence in reaching settlement agreements with two claimants before an agreement was reached with the third claimant, Levier.

AEtna settled the claims of the vehicle owner and Cartwright before it reached a settlement agreement with Levier. The district court found that this constituted preferential treatment for Cartwright, since her claims against Koppenheffer were much smaller than those of Levier and it would have been in Koppenheffer's best interests to settle with Levier first. In reaching its decision, the district court interpreted the AEtna-Koppenheffer insurance policy as leaving AEtna free to distribute the $100,000 single

limit of liability in any way that best served the interests of its insured.

AEtna argues that in settling with Cartwright it was merely adhering to the limit of liability provision of its contract with Koppenheffer and respecting the requirements of K.S.A. 40-3107 to provide every person with a minimum of $25,000 coverage for bodily injury.

The interpretation of an insurance policy, like the construction of any written instrument, is a question of law. *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 691, 840 P.2d 456 (1992). Whether an ambiguity exists in an insurance policy is similarly a question of law to be determined by the district court. *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 15 Kan. App. 2d 153, Syl. ¶ 2, 804 P.2d 1012, *rev. denied* 248 Kan. 997 (1991). The appellate court's review of conclusions of law is unlimited. *City of Chanute v. Polson*, 17 Kan. App. 2d 159, 160, 836 P.2d 6 (1992).

It is well established that insurance is a matter of contract, and, as such, courts will enforce an insurance policy as written so long as its terms are certain and do not conflict with pertinent statutes or with public policy. *Penalosa Co-op Exchange v. Farmland Mut. Ins. Co.*, 14 Kan. App. 2d 321, Syl. ¶¶ 1, 3, 789 P.2d 1196, *rev. denied* 246 Kan. 768 (1990). If there is a genuine uncertainty as to the meaning of terms in an insurance contract, the policy is ambiguous and will be construed to mean what a reasonable person in the position of the insured would have understood them to mean. *House v. American Fam. Mut. Ins. Co.*, 251 Kan. 419, Syl. ¶ 3, 837 P.2d 391 (1992).

Rules for the interpretation of insurance contracts were set out in *Mah v. United States Fire Ins. Co.*, 218 Kan. 583, 545 P.2d 366 (1976). A court should consider the insurance policy as a whole and try to determine the intention of the contracting parties from the language used in the instrument, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished. 218 Kan. at 586. Furthermore, policies should be " 'construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense.' " 218 Kan. at 586. " 'When an insurance contract is not

ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made.' " 218 Kan. at 587.

Koppenheffer's policy stated that for any one auto accident AEtna would apply the $100,000 limit of liability to *first provide* $25,000 for bodily injury to one person or $50,000 for bodily injury to two or more people, and $10,000 for injury to property of others. The policy further states that this provision will not change AEtna's total limit of liability. AEtna's private counsel interpreted this provision as allowing AEtna to provide $25,000 each to Levier and Cartwright for personal injuries and $3,100 to Levier's brother for property damage, and to pay the remaining funds into court for an interpleader action.

The clear meaning of the provision's language is that when settling an accident involving two bodily injury claimants, AEtna will first provide the two with $50,000 for their injuries. It does not say that the $50,000 must be divided equally between the two claimants. If that had been the intention of the contracting parties, it would have been a simple matter to draft a provision that said so. Presumably, AEtna was free to offer Levier all $50,000 and to offer Cartwright nothing.

AEtna's decision to offer Cartwright and Levier $25,000 each is supported by *Castorena v. Western Indemnity Co., Inc.,* 213 Kan. 103, Syl. ¶ 3, 515 P.2d 789 (1973), where the court held that "[a] liability insurer may in good faith settle part of multiple claims arising from the negligence of its insured even though such settlements deplete or exhaust the policy limits of liability so that the remaining claimants have little or no recourse against the insurer." There is no evidence that AEtna's offer of $25,000 to Cartwright was not made in good faith. AEtna's accident investigation indicated that Cartwright's injuries were valued in excess of $49,000. AEtna acted in Koppenheffer's best interests by obtaining a settlement and a release of all claims from Cartwright for only $25,000. By distributing the $50,000 in equal shares, AEtna was able to secure a settlement from at least one of the claimants in this matter.

The district court's determination that the liability limits provision in the Koppenheffer policy was void due to ambiguity is not supported by the clear language of the provision or by legal

precedent. The court relied heavily upon *Farm Bur. Mut. Ins. Co. v. Winters*, 248 Kan. 295, Syl. ¶ 3, 806 P.2d 993 (1991), which held that an automobile insurance policy is ambiguous if it fails to state that a "per occurrence" limit on liability is expressly subject to the "per person" limit. The language in "liability limits provision B." of the Koppenheffer policy states that the $100,000 single accident liability limit will be applied as $50,000 for bodily injury of two or more people. It clearly makes the liability limit per occurrence subject to the per person limits. Therefore, under *Winters*, the AEtna policy is not ambiguous.

AEtna's argument that K.S.A. 40-3107 requires it to distribute funds as it did is not convincing. AEtna points to no legal precedent giving such an interpretation to that statute. AEtna's own experts at trial conceded that 40-3107 sets minimum coverages but it does not dictate any method of settling claims after an accident. However, even though 40-3107 does not require that AEtna pay claims so as to guarantee each claimant $25,000, the statute does not forbid such a distribution of funds. Furthermore, AEtna's argument shows that it is certainly not against public policy to first provide each of two bodily injury claimants $25,000 from settlement funds when their injuries warrant it. Such an approach seems to be in the best interests of everyone involved in the accident.

Because the language of the AEtna-Koppenheffer policy unambiguously provided for the payment of claims in a manner that did not conflict with either statute or public policy, the insurance contract should be enforced as it was written. AEtna's actions in settling with Cartwright for $25,000 were neither negligent nor in bad faith. The district court's determination to the contrary was based upon an erroneous interpretation of the insurance contract and is therefore disapproved. However, due to our resolution of the second issue, the final result is the same.

The second issue raised on appeal is whether AEtna was guilty of bad faith or negligence in failing to advise Koppenheffer that Levier had offered to settle his claim for $100,000.

Levier contacted AEtna in March 1989 and offered to settle all claims against Koppenheffer for $100,000. AEtna did not respond directly to this proposal, nor did it tell Koppenheffer about Levier's offer until June 1989. The district court found that AEtna

was negligent in failing to protect the interests of Koppenheffer in settlement negotiations.

AEtna argues that it was not acting in bad faith because it had warned Koppenheffer that the claims could potentially exceed the insurance policy limits and advised him to retain private counsel. Furthermore, AEtna contends that it properly briefed Koppenheffer on the progress of the settlement negotiations.

Whether an insurer acted in bad faith or was negligent in the handling of settlement negotiations is a question for the trier of fact in each case. *Rector v. Husted*, 214 Kan. 230, Syl. ¶ 4, 519 P.2d 634 (1974). "The standard of appellate review of the trial court's findings of fact is to determine if the findings are supported by substantial competent evidence and whether they are sufficient to support the trial court's conclusions of law." *Scott v. State Farm Mut. Auto. Ins Co.*, 18 Kan. App. 2d 93, Syl. ¶ 1, 850 P.2d 262 (1992).

In Kansas, "[a] duty is imposed on the insurer to communicate to the insured the results of any investigation indicating liability in excess of policy limits and any offers of settlement, so that the insured may take proper steps to protect his own interests." *Bollinger v. Nuss*, 202 Kan. 326, Syl. ¶ 6, 449 P.2d 502 (1969). Furthermore, a claim for damages in excess of policy limits creates a duty on the part of the insurer to consider the interests of the insured as equal to its own. *Farmers Ins. Exchange v. Schropp*, 222 Kan. 612, Syl. ¶ 3, 567 P.2d 1359 (1977). "This means that the insurer must evaluate the claim without looking at the policy limits and as though it alone would be responsible for the entire amount of any judgment rendered on the claim." *Bollinger*, 202 Kan. 326, Syl. ¶ 4. In general, the insurer must conduct itself with the same degree of care which would be used by an ordinarily prudent person in the management of his or her own business affairs. 202 Kan. 326, Syl. ¶ 4.

*Bollinger* sets forth eight factors to be considered when deciding whether an insurer breached its duty of good faith to its insured:

" '[1] the strength of the injured claimant's case on the issues of liability and damages; [2] attempts by the insurer to induce the insured to contribute to a settlement; [3] failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; [4] the

insurer's rejection of advice of its own attorney or agent; [5] failure of the insurer to inform the insured of a compromise offer; [6] the amount of financial risk to which each party is exposed in the event of a refusal to settle; [7] the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and [8] any other factors tending to establish or negate bad faith on the part of the insurer.' " 202 Kan. at 338 (quoting *Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d 679, 689, 319 .P.2d 69 [1957]).

Reviewing the facts of the present case in light of the *Bollinger* factors shows that the district court had a substantial basis from which to conclude that AEtna was negligent. Levier had a very strong case against Koppenheffer both as to severity of injury and to liability, yet AEtna made no effort at all to induce Koppenheffer to contribute to the $100,000 settlement. In fact, AEtna never even informed Koppenheffer of Levier's compromise offer, nor did it ever inform him that the value of Levier's injuries was $2,120,000. Perhaps the most significant factor of all was that AEtna was exposed to no greater financial risk if Levier refused to settle because it was going to expend the entire $100,000 limit in any event. Koppenheffer, on the other hand, faced the risk of being liable for over $2 million as opposed to only $28,100 if AEtna refused Levier's settlement offer. Koppenheffer was not involved in the settlement negotiations at this time, possibly because AEtna never informed him of the estimated value of Levier's injuries. AEtna owed him the duty to negotiate in his best interests to settle Levier's claim.

AEtna breached its duty to communicate Levier's settlement offer to Koppenheffer in a timely manner. Furthermore, AEtna did not treat the settlement offer with the same degree of care it would have used if it were representing its own interests alone. An ordinarily prudent person would not reject a $100,000 settlement offer in order to face liability in excess of $2 million. Instead of protecting Koppenheffer's best interests, AEtna acted with indifference towards its insured's ultimate financial liability.

There was ample evidence in the record to support the district court's conclusion that AEtna was negligent in its handling of the settlement negotiations. Because AEtna breached its duty of good faith to its insured, it is liable for the full amount of Koppenheffer's resulting loss.

However, Koppenheffer's loss was not $528,100 ($600,000 judgment minus $71,900 payment from AEtna) as the district court concluded. If Koppenheffer had accepted Levier's original settlement offer, he would have been personally liable for $28,100. It follows that AEtna's failure to settle cost Koppenheffer $500,000. Since AEtna's negligence resulted in the loss of $500,000 to its insured, that is the proper amount for the judgment in this case. The district court's award of $528,100 in damages should therefore be modified to $500,000.

Based on the issues raised in this appeal, the decision of the district court that AEtna was negligent in not conveying Levier's initial settlement offer to Koppenheffer is affirmed. The district court's judgment in Levier's favor is modified to $500,000.

Affirmed as modified.