NORTHWESTERN PACIFIC
INDEMNITY COMPANY,
Plaintiff,

v.

SAFEWAY, INC., Swift–Eckrich, Inc., Fleming Companies, Inc., Marcus Phillips d/b/a Phillips Confections, Hanover Kansas City, Inc., Conagra Inc., & Kraft Foodservice, Inc., Defendants.

No. 00–2105–JWL.

United States District Court,
D. Kansas.

July 24, 2000.

M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, for Plaintiff.

William J. Gotfredson, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, KS, Jo Ann Butaud, Evans & Mullinix, P.A., Shawnee, KS, John M. Duggan, Deron A. Anliker, Duggan, Shadwick & Doerr, P.C., Overland Park, KS, Edward L. Smith, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, KS, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

On March 3, 2000, Northwest Pacific Indemnity Company ("NPIC") filed this declaratory judgment action seeking a declaration as to its rights and obligations under an excess umbrella liability insurance policy issued to Americold Services Corporation ("Americold"). Defendants are judgment creditors who have obtained consent judgements against Americold and who have commenced garnishment proceedings against NPIC in Kansas state court. Presently before the court is defendants' Motion to Stay or in the Alternative to Dismiss this declaratory judgment action (Doc. 3). Defendants assert that stay or dismissal is proper because the state garnishment action has been pending for nearly eight years, involves the same parties and issues as the present action, and affords the parties an opportunity to litigate all issues in this case. For the reasons set forth below, the court grants defendants' motion and stays the current action.

## I. Facts[1]

On December 28, 1991, a fire started in an underground cold storage facility managed by Americold in Kansas City, Kansas. As a result of the fire, food products owned by various tenants of the facility, defendants in this action, became contaminated and lost their value. Thereafter,

---

1. A detailed discussion of the facts leading up to this action can also be found in *Associated* *Wholesale Grocers, Inc. v. Americold Corp.,* 261 Kan. 806, 934 P.2d 65 (1997).

Americold submitted claims to its insurers for coverage with respect to liability arising out of the fire. Americold was insured by National Union Fire Insurance Company ("National Union"), which provided the primary general liability insurance coverage with a policy limit of $1 million per occurrence. NPIC provided an excess umbrella liability insurance policy with a limit of $25 million. TIG Insurance Company ("TIG") provided liability coverage up to $15 million in excess of NPIC.

Beginning in April 1992, the tenants of the warehouse filed lawsuits against Americold in both federal and state courts. These suits were eventually consolidated in Kansas state court ("underlying litigation"). National Union, as the primary insurer, defended Americold in the underlying litigation.[2] On November 9, 1993, the tenants made a settlement demand in the amount of $41 million, which included settlement by NPIC for its policy limits. NPIC did not accept this policy limits settlement demand. On February 9, 1994, the state court and the federal district court ordered the parties to participate in settlement conferences. On March 8, 1994, the tenants offered to settle for $40.75 million. NPIC rejected the settlement, noting that liability was in dispute. On March 10, 1994, Americold entered into a settlement agreement with the tenants. The settlement provided for the entry of consent judgments in favor of the tenants in the total amount of $58,754,574. The tenants also covenanted not to execute on the judgments against Americold in exchange for Americold's assignment to the tenants of all of Americold's rights against its insurers.

On March 15, 1994, NPIC filed a declaratory judgment action in the District Court of Johnson County, Kansas against Americold and the tenants to determine coverage issues under its policy. In September 1994, the tenants filed orders of garnishment against NPIC and TIG in the District Court of Wyandotte County, Kansas. The various garnishment proceedings were consolidated and captioned *Associated Wholesale Grocers, Inc. v. Americold Corporation*, Case No. 92–C–4015. NPIC's state declaratory judgment action was transferred to Wyandotte County and the trial court dismissed it without prejudice, holding that the coverage issues raised could be litigated in the garnishment actions. All parties in the garnishment action filed motions for summary judgment. The district court denied the summary judgment motions of NPIC and TIG, and granted summary judgment for the tenants. On September 20, 1995, the district court entered judgment in favor of the tenants in the amount of $58,670,754 plus interest. NPIC would be liable up to its $25 million policy limit and jointly and severally liable with TIG for all amounts above policy limits. The district court later clarified its September 20, 1995 journal entry and entered a larger judgment against NPIC.

NPIC and TIG appealed the district court's decision to the Supreme Court of Kansas.[3] On March 7, 1997, the Supreme Court of Kansas rendered its decision, affirming in part, reversing in part, and remanding the case to the district court. The Supreme Court held that: (1) an absolute pollution exception in the NPIC insurance policy did not exclude coverage, (2) material issues of fact remain as to the reasonableness of the policy limits settlement offer proposed by the tenants, (3) material issues of fact remain as to the reasonableness of the settlement agreement reached between Americold and the tenants which resulted in the consent judg-

2. National Union orally tendered the defense to NPIC on March 9, 1994, after National Union determined that it was bound to pay its policy limit. However, Americold refused NPIC's offer to defend under a reservation of right.

3. After filing its appellate brief, however, TIG settled with the tenants for its policy limits.

ments, (4) material issues of fact remain as to whether NPIC acted in bad faith in denying coverage and refusing to settle within its policy limit, and (5) material issues of fact remain as to NPIC's liability above its policy limit.

On remand, NPIC filed a motion to convert the garnishment proceeding to a breach of contract action. NPIC also retained the Cozen and O'Connor law firm as new counsel. The tenants opposed the admission of Cozen and O'Connor, claiming that they had an implied attorney-client relationship with the firm. On October 15, 1997, the district court granted the tenant's motion for disqualification of Cozen and O'Connor and stayed the pending case until a final determination could be made on the disqualification order. On March 5, 1999, the Supreme Court of Kansas reversed the district court and allowed Cozen and O'Connor to proceed as counsel in the state action. *See Associated Wholesale Grocers Inc. v. Americold Corp.*, 266 Kan. 1047, 975 P.2d 231 (1999). NPIC then filed a motion for change of judge pursuant to K.S.A. 20–311d(a) on April 22, 1999. The district court denied the motion to recuse himself and was affirmed on appeal. Finally, on September 29, 1999, the state trial court denied NPIC's motion to convert the garnishment proceeding to a breach of contract action.

Thus, a garnishment action remains pending in Kansas state court between the parties in this action.[4] On March 24, 2000, the district court issued a scheduling order delineating discovery periods for different issues pending in the state suit, and discovery is currently taking place. The district court scheduled trial to commence on June 4, 2001. On March 3, 2000, however, NPIC filed this declaratory judgment action in federal court. NPIC seeks a declaration that (1) NPIC acted in good faith in denying coverage to Americold, (2) NPIC acted in good faith in refusing to accept

settlement offers proposed by the tenants, (3) NPIC is not liable for compensatory damages allegedly suffered by Americold because the settlement entered into between the tenants and Americold was collusive, and (4) NPIC is not liable for damages greater than its policy limits because it did not act in bad faith. The court must now determine whether the declaratory judgment action should be stayed or dismissed in light of the pending state law proceeding.

## II. Legal Standard

The United States Supreme Court recently set forth the legal standards which should "govern[ ] a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings" in *Wilton v. Seven Falls Company*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). In *Wilton*, London Underwriters filed a declaratory judgment action in federal court, seeking a declaration of its rights and obligations under commercial liability insurance policies issued to the Hill Group ("insureds"). *See id.* at 280, 115 S.Ct. 2137. Approximately one month later, the insureds brought an action on the contract in state court and moved to dismiss, or, in the alternative, to stay the federal declaratory judgment action. *See id.* Finding that the pending state lawsuit encompassed the same coverage issues raised in the declaratory judgment action, the district court entered a stay of the federal action to prevent piecemeal litigation and forum shopping. *See id.* The Fifth Circuit Court of Appeals affirmed the district court's decision.

■ The Supreme Court granted certiorari to resolve a circuit split regarding whether the "discretionary" standard set forth in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), governing district

---

**4.** In the state court action, however, the designation of the parties are the reverse of those in this case: the tenants are the plaintiffs there and the defendants here; NPIC is the defendant there and the plaintiff here.

courts' decisions to stay declaratory judgment actions, had been replaced by the "exceptional circumstances" standard developed in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The Court held that *Brillhart* remains applicable today, and that district courts should apply a discretionary standard when deciding whether to exercise jurisdiction in cases such as the one currently at issue. The Court then took note of the following guidance provided by *Brillhart* to aid district courts in the exercise of their discretion:

> [O]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. The question for a district court presented with a suit under the Declaratory Judgment Act ... is whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.

*Wilton,* 515 U.S. at 282, 115 S.Ct. 2137 (internal citations and quotations omitted).

■ The Court set forth the following *Brillhart* factors for district courts to consider when answering the question presented: (1) whether the claims of all parties can be satisfactorily adjudicated in the state proceeding, (2) whether the necessary parties have been joined in the state proceeding, and (3) whether such parties are amenable to process in the state proceeding. *Id.* at 283, 115 S.Ct. 2137. The Court recognized, however, that other cases "might shed light on additional factors." *Id.* To that end, the Tenth Circuit, in a post-*Wilton* decision, has discussed five additional factors which a district court should weigh when deciding whether

to stay or dismiss a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Buzas Baseball, Inc. v. Board of Regents,* 189 F.3d 477, No. 98–4089, 1999 WL 682883, at *2 (10th Cir. Sept.2, 1999); *see also St. Paul Fire and Marine Ins. Co. v. Runyon,* 53 F.3d 1167, 1169 (10th Cir. 1995) (setting forth the same five factors).

As discussed below, the balance of these eight factors leads the court to decline jurisdiction over the declaratory judgment action filed by NPIC.

### III. Discussion

The Supreme Court has stated that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permitted the federal declaratory judgment action to proceed." *Wilton,* 515 U.S. at 283, 115 S.Ct. 2137 (quoting *Brillhart,* 316 U.S. at 495, 62 S.Ct. 1173). Here, a garnishment proceeding is pending in Kansas state court involving the exact same parties and state law issues as those in this declaratory judgment action. To avoid gratuitous interference with the state court action, therefore, the court exercises its discretion to stay the pending action.[5]

---

**5.** NPIC cites a number of cases in which courts in this circuit have resolved insurance

bad faith disputes under the Federal Declaratory Judgment Act. *See Hazelrigg v. American*

The court reaches its decision after considering the factors set forth by the Supreme Court and the Tenth Circuit. Applying the *Wilton/Brillhart* factors, it is undisputed that the necessary parties are amenable to process and have been joined in the state proceeding. Thus, the court focuses its inquiry on whether NPIC's claims can be adjudicated in the state proceeding. Citing a decision of the Kansas Court of Appeals, NPIC asserts that garnishment proceedings do not provide a forum for the adjudication of disputes as to the amount of judgment entered in favor of the garnishor. *See Asbury v. Mauk,* 9 Kan.App.2d 699, 687 P.2d 31 (1984). Thus, according to NPIC, the state court cannot determine the propriety of the amount of the settlement reached between the tenants and Americold. The court disagrees.

First, *Asbury* is distinguishable from the present action. In *Asbury,* a landlord recovered a judgment against tenants for unpaid rent and brought a garnishment action in Kansas state court. *See id.* at 33. As a "defense" to the garnishment action, the tenants asserted that the landlord had failed to return their security deposit. *See id.* The Kansas Court of Appeals concluded that it was not proper for the district court to consider the tenants' security deposit claim in the garnishment proceeding. *See id.* at 34. The court held that the claim for security deposit was not in the nature of a defense, but was in the nature of an independent cause of action. *See id.* In contrast, NPIC's claim that the settlement reached between the tenants and Americold was collusive is not in the nature of a separate cause of action. Rather, the assertion is intertwined with the underlying action, as it calls into question the validity of the judgments which the tenants are seeking to collect. This would be akin to the tenants in *Asbury* asserting, for example, that the rent was unilaterally raised by the landlord in violation of the rental agreement, thus making the judgment for the amount of rent owed improper. The court finds an opinion issued by the Kansas Court of Appeals after *Asbury* to be more factually on point with the present dispute. In *Murphy v. Silver Creek Oil & Gas, Incorporated,* 17 Kan. App.2d 213, 837 P.2d 1319 (1992), the court held that an insurer who did not defend its insured in an underlying tort action was not barred from asserting in a subsequent garnishment proceeding the defense that the settlement reached in the underlying tort action was in bad faith. Applying this rule, the court finds that NPIC will not be barred from presenting its asserted defense in the state garnishment proceeding.[6]

Perhaps more importantly, the Supreme Court of Kansas has specifically directed the state district court to examine the reasonableness of the settlement reached upon remand. *See Associated Wholesale Grocers, Inc., v. Americold Corp.,* 261 Kan. 806, 934 P.2d 65, 87 (1997). The Supreme Court of Kansas stated, "[w]e give the district court flexibility [in making the determination]," but suggested that "affidavits with documentation could be offered to support the amounts of the claims … [and] independent expert testimony evaluating the strengths and weaknesses of the parties' positions could be presented." *Id.* As the Supreme Court of Kansas has di-

*Fidelity & Cas. Co.,* 228 F.2d 953 (10th Cir. 1955); *Grain Dealers Mut. Ins. Co. v. Farmers Union Coop. Elevator & Shipping Ass'n,* 377 F.2d 672 (10th Cir.1967); *United Wats, Inc. v. Cincinnati Ins. Co.,* 971 F.Supp. 1375 (D.Kan. 1997); *National Union Fire Ins. Co. v. Midland Bancor, Inc.,* 854 F.Supp. 782 (D.Kan. 1994). The court notes, however, that none of these cases involved pending parallel state proceedings. While the court recognizes that the exercise of declaratory judgment jurisdic-

tion is appropriate in many situations, the court does not find it appropriate here.

**6.** Moreover, defendants have cited a number of Kansas garnishment actions in which the bad faith of an insurer was properly litigated. *See e.g., Levier v. Koppenheffer,* 19 Kan.App.2d 971, 879 P.2d 40 (1994); *Smith v. Blackwell,* 14 Kan.App.2d 158, 791 P.2d 1343 (1989); *Bell v. Tilton,* 234 Kan. 461, 674 P.2d 468 (1983).

rectly remanded this issue for the district court's determination, the court has no doubts that the state court proceeding will provide an adequate forum for the determination of the propriety of the settlement amount.[7]

Although NPIC does not address whether its other claims can be satisfactorily adjudicated in the parallel state proceeding, the court finds that they can. NPIC's Complaint for Declaratory Judgment requests the court to make four specific declarations: (1) that NPIC acted reasonably and in good faith in its decision to deny coverage to Americold, (2) that NPIC acted reasonably and in good faith in refusing to accept settlement offers proposed by the tenants, (3) that NPIC is not liable for compensatory damages allegedly suffered by Americold because the settlement and consent judgments agreed upon by Americold and the tenants were collusive, and (4) that NPIC is not liable for damages greater than its policy limits because it did not act in bad faith.[8] These requests, although phrased slightly differently, involve the exact four issues which the Supreme Court of Kansas has remanded to the state district court: (1) whether NPIC acted in bad faith in denying coverage to Americold and refusing to settle within its policy limits, (2) whether the policy limits settlement offer proposed by the tenants was reasonable, (3) whether the settlement agreement ultimately entered into by Americold and the tenants was reasonable, and (4) whether NPIC is liable for damages above its policy limit. *See Associated Wholesale Grocers*, 934 P.2d at 71, 93–94. As NPIC's claims in this declaratory judgment action will be specifically addressed by the state court on remand, the court finds that the *Wilton/Brillhart* factors weigh in favor of a stay.

Next, the court examines the five additional factors propounded by the Tenth Circuit for district courts to consider when deciding whether to stay or dismiss a declaratory judgment action. The first two factors, whether a declaratory action would settle the controversy and whether a declaratory action would clarify the legal relations at issue, weigh in favor of NPIC. If the court were to issue declarations on the four issues currently remaining between the parties, the "legal relations at issue" would surely be clarified. And while the requested declarations would not officially end the controversy between the parties, res judicata would require the state trial court to apply the principles expounded to the garnishment action. The remaining three factors, however, weigh in defendants' favor.

The third *Buzas/Runyon* factor is whether the declaratory judgment action is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata." Here, the parallel state garnishment proceeding has been pending since 1994. NPIC did not file this federal declaratory judgment action until more than five years had passed since the entry of the consent judgments. While timing alone does not necessarily demonstrate bad faith on the part of NPIC, when it is viewed in connection with other elements of the state court proceeding the court is convinced that NPIC is engaging in procedural fencing. *See Runyon*, 53 F.3d at 1170 (district court did not abuse its discretion in declining to exercise declaratory judgment jurisdiction where insurer-plaintiff waited three years before seeking a declaration and only then filed suit because it knew that insured was planning to file a state contract action the following day). NPIC admits that one reason why it filed this federal action was

---

7. In fact, the state trial court has ordered discovery into "the merits of the underlying claims by the plaintiffs [tenants] against Americold." *See Associated Wholesale Grocers*, No. 92–C–4015, March 24, 2000, Discovery Order, at 2.

8. NPIC also generally seeks a declaration construing the terms of the NPIC policy, but this general request will necessarily be addressed by a court determining the four specific issues presented.

because the court could provide a "fresh perspective, as opposed to a state court that has already rendered prior decisions on many of the issues to be determined on remand." (Doc. 7 at 22). It is no secret that NPIC is of the opinion that Kansas District Court Judge Philip Sieve "harbors a predisposition against NPIC and the positions that NPIC has taken in this case." [9] Aff. of Stephen Cozen, submitted in support of NPIC's Motion for Disqualification of Judge Sieve. The combination of this factor and the suspect timing of the filing of this action leads the court to believe that NPIC is seeking declaratory action as much for the purpose of attempting to obtain a more favorable forum and a quicker path to res judicata as for any substantive reason.

The fourth factor that the court considers is whether the exercise of jurisdiction pursuant to the Declaratory Judgment Act would increase friction between federal and state courts and improperly encroach upon state jurisdiction. The court finds that, given the extensive history of this dispute in state court and the prevalence of state law claims, if the court were to exercise its declaratory jurisdiction it would cause unnecessary friction with the Kansas state courts. This dispute has been alive in state court for over seven years and remains active today. Over 90 depositions were taken in the underlying action against Americold and thousands of pages of documents have been exchanged, and continue to be exchanged,[10] pursuant to discovery in the state action. The Supreme Court of Kansas has reviewed this case on two occasions, and has set forth the issues left to be determined in this

dispute. If the court were to exercise jurisdiction, it would be forced to interpret the decisions of the Supreme Court of Kansas and Kansas law. While NCIP asserts that the court has the option of certifying any questions which arise to the Supreme Court of Kansas, this argument leaves the court even more convinced that Kansas courts provide the appropriate forum for a ruling on the state law issues involved here.

The final factor that the court weighs is whether there is an alternative remedy to a federal court declaration which is better or more effective. Because the court has concluded above that there is an adequate and effective remedy afforded by the pending state garnishment proceeding, the court finds that this factor weighs in favor of defendants. *See ARW Exploration Corp. v. Aguirre*, 947 F.2d 450, 454 (10th Cir.1991) ("[T]he court must decide whether the controversy can better be settled in a pending action, i.e., whether there is such a plain, adequate and speedy remedy afforded in the pending state court action, that a declaratory judgment action will serve no useful purpose.") (internal citations and quotations omitted). NPIC argues that "litigating this action in the context of a declaratory judgment action would be more effective means [sic] of determining the issues in this case then [sic] through garnishment proceedings, where there are minimal pleadings and no right to a jury trial." (Doc. 7 at 22). NPIC's argument stems from the fact that a jury trial may not be demanded as a matter of right in a Kansas garnishment proceeding.[11] *See Bollinger v. Nuss*, 202

---

**9.** NPIC filed a Motion for Change of Judge, but Judge Sieve denied the motion after holding a hearing on the request. The Chief Judge of the 1st Judicial Circuit, appointed by the Supreme Court of Kansas to review the request, also issued an order on July 29, 1999, finding that evidence did not support disqualification of Judge Seive. *See Associated Wholesale Grocers, Inc. v. Northwestern Pacific Indem. Co.*, No. 92–c–4015 (July 29, 1999).

**10.** *See Associated Wholesale Grocers*, No. 92–C–4015, March 24, 2000, Discovery Order.

**11.** While the right to a jury trial prescribed in the Seventh Amendment to the United States Constitution is not applicable to the states, Section 5 of the Bill of Rights of the Kansas State Constitution has the same effect of providing for jury trials in actions which existed at common law. *See First Nat'l Bank v. Clark*, 226 Kan. 619, 622, 602 P.2d 1299, 1302 (1979); *Waggener v. Seever Systems, Inc.*, 233

Kan. 326, 342, 449 P.2d 502, 514 (1969). In order to obtain a jury trial in the state proceeding, NPIC moved to convert the state garnishment action to a breach of contract action after remand. The district court denied the motion.

The district court's refusal to grant NPIC a jury trial does not change the court's belief that this dispute is best litigated in Kansas state courts. If NPIC deems itself injured by the district court's decision, the Kansas court system provides it an opportunity to appeal the decision. *See* K.S.A. 60–2102 to 60–2103. NPIC has not cited, and the court has not found, any case in which a federal court has accepted declaratory judgment jurisdiction solely for the purpose of holding a jury trial. As directed by the Supreme Court in *Brillhart,* the court will not proceed in a declaratory judgment suit which would be "uneconomical as well as vexatious," in light of the effective remedy provided by Kansas courts.

Because the balance of the above factors weighs in favor of declining to exercise jurisdiction in this declaratory judgment action,[12] the court grants defendants' motion to stay.[13]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to stay (Doc. 3) is granted. This case shall be administratively closed. The parties are ordered to notify the court within ten (10) days of the termination of the state case in the event that either plaintiff or defendants wish to seek to re-open this case, or, if not, so that this case can be dismissed.

**IT IS SO ORDERED.**

Kan. 517, 523, 664 P.2d 813, 819 (1983). The *Bollinger* court has determined that garnishment is an extraordinary remedy provided by statute and not available at common law. In any event, NPIC did not make a timely request for a jury trial in the state proceeding, thus waiving any right to a jury trial which it might have had. *See* K.S.A. 60–238.

12. In this opinion, the court has applied the "discretionary" standard set forth by the Supreme Court in *Brillhart* and *Wilton.* The application of this standard distinguishes this decision from pre-*Wilton* District of Kansas decisions cited by NCIP. *See* cases cited, Doc. 7 at 23–24. In addition to being factually distinguishable from the instant action, *see* Doc. 8 at 12–14, the cited cases primarily applied the "exceptional circumstances" test developed in *Colorado River.* Accordingly, the court does not find them persuasive.

13. The Supreme Court has noted that "where the basis for declining to proceed [with a declaratory judgment action] is the pendency of a state proceeding, a stay will often be the preferable course [rather than dismissal], because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton,* 515 U.S. at 288 n. 2, 115 S.Ct. 2137.