(138 P.3d 1279)
No. 94,266

BENCHMARK INSURANCE COMPANY, *Appellee,* v. CLYDE AND DINAH ATCHISON, INDIVIDUALLY AND AS NATURAL PARENTS OF DUSTIN ATCHISON, A MINOR, *et al., Appellees,* and KAYLA MELL, A MINOR, BY AND THROUGH HER FATHER AND NEXT FRIEND, GEORGE T. MELL, *Appellants.*

Opinion filed August 4, 2006.

*Robert E. McRorey,* of Olathe, for appellants.

*J. Franklin Hummer,* of Shawnee Mission, for appellee Benchmark Insurance Company.

Before MCANANY, P.J., MARQUARDT and CAPLINGER, JJ.

CAPLINGER, J.: This is an interpleader action filed by Benchmark Insurance Company arising out of a single-car accident in which its insured, Candi Atchison, was the driver of the vehicle. The accident killed one passenger and injured three other passengers including Kayla Mell. Mell appeals the trial court's grant of summary judgment in favor of Benchmark on the issue of whether Benchmark was negligent or acting in bad faith in refusing to accept a settlement offer from Mell.

Because Benchmark owed no duty to Mell and the insured did not assign her rights under the insurance agreement to Mell, we find Benchmark had no duty to negotiate and settle with Mell, and we uphold the summary judgment in favor of Benchmark for that reason.

*Factual and procedural background*

This action arose out of a tragic traffic accident in Franklin County. The following summary of the accident is derived from the investigation report of the accident by Benchmark's claim investigator.

On September 3, 2003, Candi, age 17, was driving a vehicle on a gravel road in rural Franklin County, traveling approximately 80 miles per hour. The four passengers in the vehicle were: Candi's brother, Dustin Atchison, age 12; Christina Vega, age 14; Kayla Mell, age 14; and Levi Oakes, age 15.

Richard Hale had stopped his pickup truck on the gravel road and was observing nearby hunters to insure they did not hunt on Hale's property. When Candi attempted to drive around Hale's truck, she lost control of the vehicle and hit a bridge abutment, causing the car to catch fire and turn over, landing on its top. The initial impact killed Vega. Oakes crawled out of the vehicle and then pulled Mell and Dustin out of the vehicle as well. Two hunters who rushed to the scene pulled Candi from the vehicle.

Oakes sustained second-degree burns to both forearms and his neck and fractured his left shoulder. Oakes' medical bills were approximately $19,000.

Dustin suffered third-degree burns over 60% of his body, his left arm and his pelvis were broken, and both feet were amputated because of severe burns. He was fitted with prosthetic legs and will require future surgeries for scar revisions and modifications of the prosthetics. His medical bills are in excess of $500,000.

Candi was severely burned over 40% of her body, her pelvis and her right ankle were crushed. She will require more surgeries in the future for scar revisions, and her medical expenses will exceed $500,000.

Mell was severely burned on her backside, and her medical bills have exceeded $400,000.

Candi was insured by Benchmark with a $25,000 bodily injury per person limit and a $50,000 bodily injury per accident aggregate. An independent adjuster filed a detailed report of the accident investigation on October 19, 2003, and at that point, Benchmark was aware it was dealing with a death and serious injuries to multiple persons who continued to receive treatment for their burns and injuries. Further, Benchmark was aware that the claims resulting from this accident would likely exceed the $50,000 policy limit.

On January 7, 2004, Mell's attorney sent a demand letter to Benchmark, offering to settle the case for the individual policy limit of $25,000 and giving Benchmark 30 days to accept the offer.

In a letter dated January 23, 2004, Benchmark responded to Mell's settlement offer, confirming the policy limits of $25,000 bodily injury per person and $50,000 bodily injury per accident. The letter which was sent to Mell's attorney, as well as to the parents of the other three minor children, stated:

"We believe that the total sum of all damages exceeds the available policy limits. We have an obligation to attempt to settle all of the claims presented against our insured, Candi Atchison. We are hereby advising you that our total policy limits of $50,000 are available to settle claims that you or your child may have against Candi Atchison. We will require releases to be signed.

"We would encourage all of you to communicate with each other to see if you can arrive at an agreement as to how these funds should be apportioned to each of you. We will also need you to provide to us all available bills and medical reports. If you need assistance with this, we can provide you with a medical authorization that will permit us to gather these ourselves.

"In the alternative, if an agreement cannot be reached, we will have to consider filing an action with the court and ask the court to decide how the $50,000 should be apportioned."

Mell's attorney responded by letter dated February 6, 2004, stating he was not "qualified" to "contact the other injured claimants and develop an agreed settlement proposal."

On February 24, 2004, Benchmark filed an interpleader action in district court against the parents of the three injured minor passengers and the one minor killed in the accident. Benchmark sub-

mitted a sum of $50,000 as the policy limits of Candi Atchison's coverage and requested the court's direction in allocating the funds among the three injured minors and the heirs of Vega. Mell answered, asserting Benchmark acted negligently or without good faith in failing to accept Mell's settlement demand, thereby exposing Benchmark to liability in excess of the policy limits.

Benchmark filed a motion for partial summary judgment, disputing Mell's claim of negligence or bad faith and requesting discharge from further liability. Mell also filed a motion for partial summary judgment. The district court granted summary judgment in favor of Benchmark, finding there were no disputed facts and Benchmark did not act negligently or in bad faith in failing to accept Mell's settlement offer.

Following Mell's appeal of the grant of summary judgment, this court issued a show cause order stating the appeal might be interlocutory if the claims of all parties had not been determined. After receiving Mell's response, this court remanded the matter to the district court for the limited purpose of conducting a hearing on the propriety of certifying the case as final for appeal purposes pursuant to K.S.A. 60-254(b). The district court certified the issue on appeal as a final judgment, holding there was no just reason for delay.

*Standard of review*

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, [an appellate court must] apply the same rules and where . . . reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

The trial court found no disputed facts. Where there is no factual dispute, appellate review of an order regarding summary judgment

is de novo. *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004).

*Existence of duty*

In their appeal briefs, both Benchmark and Mell address the issue of whether Benchmark was negligent or acting in bad faith in failing to accept Mell's settlement offer. Mell argues that because her medical expenses clearly exceeded the $50,000 aggregate policy limit, Benchmark acted negligently and in bad faith in failing to settle with Mell by paying the policy limit of $25,000. Benchmark responds it did not act negligently or in bad faith because in filing the interpleader action, it followed the procedures set out by the Kansas Supreme Court in *Farmers Ins. Exchange v. Schropp*, 222 Kan. 612, 567 P.2d 1359 (1977). Benchmark further alleges Mell's argument was prompted "only out of greed" and showed bad faith on her part.

The case law cited by both parties discusses the legal principle that an insurer owes *to its insured* the duty to act in good faith and without negligence. This duty arises under the contract. See *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 845, 934 P.2d 65 (1997). However, in this case, Mell is a third-party claimant, not an insured of Benchmark; nor is there evidence indicating Candi assigned her claims to Mell.

Thus, following briefing but before oral argument, this court issued an order requesting the parties to address the issue of whether Benchmark owed any duty to Mell directly or whether the insured, Candi Atchison, had assigned any rights under her insurance policy with Benchmark to Mell. The court requested that the parties either file supplemental briefs or be prepared to address the issue in oral argument. Both parties submitted supplemental information to the court and responded to the issue at oral argument.

In considering the issue of whether Benchmark owed a duty to Mell, it is instructive to review the cases cited by the parties in support of their arguments as to the merits of the negligence/good faith settlement issue and, particularly, to consider the status of the insured in each case.

Both parties cite *Schropp*, 222 Kan. at 613-14, in support of their opposing arguments as to the existence of bad faith. There, a two-car collision killed the driver of a vehicle, Clint R. Sohl, an insured of Farmers, and injured several passengers including Schropp. Schropp incurred medical bills exceeding $26,000 and made formal settlement demand to Farmers for payment of the policy limits with a 10-day time frame. As in this case, the policy limits were $25,000 per person and $50,000 for each accident.

Farmers made no settlement offers to any party, even though Farmers was aware its insured was at fault, there was no evidence of contributory negligence, and Schropp's medical expenses alone exceeded its policy limits; instead, Farmers claimed that Sohl was not negligent and denied Schropp's claims. Farmers then filed a petition for declaratory judgment in district court, naming the injured passengers in the vehicle as well as the parents of a minor passenger as defendants. At the time it filed the declaratory judgment action, Farmers paid $50,000 into court and asked the court to determine its rights and those of the defendants.

Significantly, in *Schropp*, the district court found Sohl's estate to be a necessary party and granted Schropp's motion to join the estate as an additional party defendant. Additionally, Schropp counterclaimed against Farmers and cross-claimed against Sohl alleging Farmers handled his claim in bad faith in violation of its duties to the insured. The administrator of Sohl's estate also filed a counterclaim against Farmers alleging Farmers acted negligently and in bad faith in handling Schropp's claim.

The jury ultimately found Farmers acted negligently or in bad faith "toward its insured" in handling Schropp's claim, and the court awarded damages in favor of Sohl's estate and Schropp. On appeal, the Kansas Supreme Court concluded that "there was substantial competent evidence to support the jury's finding that Farmers acted negligently or in bad faith *toward its insured* in the handling of the claims arising out of the collision." (Emphasis added.) 222 Kan. at 621.

Benchmark points out that it followed the procedures recommended by the court in *Schropp* when it filed this interpleader action and payed its policy limits into court. Thus, Benchmark

urges us to find as a matter of law that it did not act negligently or in bad faith in refusing to settle Mell's claim. However, the facts here are unlike those in *Schropp*, where the insured (1) was a party to the declaratory judgment action, (2) was the subject of a cross-claim by Schropp, and (3) had counterclaimed against Farmers alleging breach of the duty owed to the insured under the policy.

In contrast to the procedural setting in *Schropp*, the insured here was not a party to the interpleader and had not assigned her rights to the claimant. Further, the issue of whether Benchmark was negligent or acted in bad faith toward the insured in refusing to settle with Mell was never raised or argued. Moreover, while Schropp was awarded damages in the declaratory judgment action filed by Farmers, the basis for the judgment was Farmers' negligence and bad faith toward its *insured* in handling the claims arising out of the collision.

The case relied upon by Mell with respect to her claim that Benchmark acted negligently and in bad faith, *Levier v. Koppenheffer*, 19 Kan. App. 2d 971, 879 P.2d 40, *rev. denied* 255 Kan. 1002 (1994), is similarly unpersuasive.

In *Levier*, a car driven by Koppenheffer collided with a truck driven by Levier, who was seriously injured in the accident. Koppenheffer's insurer, AEtna Casualty and Surety Company (AEtna), concluded Koppenheffer was 95-100% at fault. Levier's claim was estimated to be $2,120,000, and the other passenger's claim was approximately $50,000.

AEtna settled with the other passenger for $25,000 but failed to respond to Levier's settlement offer for $100,000. AEtna paid the balance of its policy, $71,900, into the district court in an interpleader action, and the sum was eventually paid to Levier. Levier obtained a consent judgment against Koppenheffer for $600,000, and Koppenheffer assigned all claims against AEtna to Levier. Levier then filed a garnishment action against AEtna.

The district court in *Levier* held AEtna was negligent in two respects: preferential treatment of the other passenger claimant and failure to timely advise Koppenheffer of Levier's settlement offer. This court affirmed these holdings, finding AEtna breached its duty of good faith to its insured and was liable for the full

amount of Koppenheffer's resulting loss. 19 Kan. App. 2d at 975-80.

Significantly, Levier was awarded damages, not because of any breach of a duty owed to *him* but because Aetna breached its duty to its *insured*, Koppenheffer, who had assigned his rights to Levier. Here, Candi Atchison did not assign her rights under the insurance contract to Mell, and Candi was not a party to this interpleader action. Simply stated, an insurer has no duty to reasonably negotiate and settle with a third-party claimant where there is no contract (or assignment of policy rights) between them.

Other jurisdictions have held as a general rule that third parties who are strangers to an insurance contract cannot maintain an action against an insurer for the failure to negotiate and settle a third party's claim against the insured because the duty of good faith and fair dealing in the handling of claims runs only from the insurance company to its insured. See, *e.g.*, *Linscott v. State Farm Mutual Auto. Ins. Co.*, 368 A.2d 1161, 1163-64 (Me. 1977); *McWhirter v. Fire Ins. Exchange, Inc.*, 878 P.2d 1056, 1058-59 (Okla. 1994); *Larocque v. State Farm Insurance Company*, 163 Vt. 617, 618-19, 660 A.2d 286 (1995).

In this case, the trial court found no negligence or bad faith in Benchmark's dealing with Mell, apparently assuming Benchmark owed a duty to Mell. However, because no duty was owed as a matter of law, summary judgment was appropriate. See *Hall v. Kansas Farm Bureau*, 274 Kan. 263, 273, 50 P.3d 495 (2002) (the reason given by the trial court for its ruling is immaterial if the result is correct).

Affirmed.